DOROTHY M. BILLINGSLEY ET AL. *v.* BERTHA M. BRADLEY ET AL.

[No. 22, January Term, 1934.]

*Decided March 2nd, 1934.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Isaac Lobe Straus* and *J. Paul Schmidt,* for the appellants.

*F. Murray Benson,* with whom were *William S. Levy* and *Edgar Allan Poe* on the brief, for the appellees.

DIGGES, J., delivered the opinion of the Court.

John Carson, a member of the bar of Baltimore City, died during the month of April, 1883, leaving a last will and codicil, wherein, after providing for the payment of his debts and funeral expenses, and making specific bequests of certain personal chattels, he created a trust of all the rest and residue of his estate, the pertinent provisions of which are as follows:

"Fourth: All the rest and residue of my entire estate of every sort and description, and wheresoever situate, I give and devise, absolutely and forever to Thomas M. Lanahan and my son John Carson, Jr., and their survivor, his heirs, executors and administrators, in trust as follows:

"Fifth: In trust as to one-fourth thereof (save John's insurance money) for my daughter Anne for life, for her sole and separate use, free of all marital right and control whatsoever, and after her death in trust absolutely for her children, subject as hereinafter stated.

"Should Annie die without leaving a child or children living at her death, or should such child or children all die within twenty-one years of Annie's death, then I give and devise said one-fourth to Mattie L., John and Bertha upon the same trusts, and the same extent, and in the same manner, as I have provided for them in the Sixth, Seventh and Eighth clauses of this my will.

"Annie's children to enjoy the interest and income of said one-fourth during said twenty-one years.

"Sixth: In trust as to one other fourth thereof (save John's insurance money) for my daughter Mattie L., and her children, upon the same trusts, in the same manner, and to the same extent, with a like provision as to the interest and income during said

twenty-one years, and with a like limitation over in favor of John, Annie and Bertha, and their children, as is provided in the Fifth clause of this my will; and Mattie's estate and interest so limited over, if said limitation takes effect, is to go as is provided, in the Fifth, Seventh and Eighth clauses of this my will, and upon the same trusts as therein provided.

"Seventh: In trust as to one other fourth part thereof (including John's insurance money) for my daughter Bertha, and her children, upon the same trusts, in the same manner and to the same extent, with a like provision as to the interest and income during said twenty-one years, and with a like limitation over in favor of Annie, Mattie L. and John, Jr., and their children, as is provided in the Fifth clause of this my will; and Bertha's estate and interest so limited over, if said limitation takes effect, is to go as is provided upon the same trusts as are set forth in the Fifth, Sixth and Eighth clauses of this my will, and none other.

"Eighth: In trust as to the remaining fourth part thereof (save John's insurance money) absolutely for my son John, Jr., when he arrives at twenty-five years of age, to vest now, and the interest to be payable to him, but the principal not to be payable or saleable until the period aforesaid."

## Codicil.

"First: The bequest of John's insurance money which by the Third and Seventh clause of my said will I gave and devised to my daughter Bertha I hereby revoke and annul and in lieu thereof and of the conditional bequest thereof, and of my law library to Bertha by said Third clause which said conditional bequest is also hereby annulled and revoked, I hereby give, devise and bequeath all John's insurance money aforesaid to go with and pass under the Fourth clause of my said Last Will and Testament so that all my children share equally in the same.

"Second: I authorize my executors and trustees from time to time hereafter (including the survivor

of said trustees) at all times hereafter in their discretion and judgment to advance to each of any one of my said daughters and each of them such portion of the principal of my said estate coming to them separately as my trustees or their survivor shall deem proper.

"Fifth: I make no provision for my grandson John C. Naylor as I consider him sufficiently provided for."

The testator was survived by one son and three daughters, namely, John Carson, Jr., Mattie L., Bertha, and Annie. He also left one grandson, John C. Naylor, the son of a deceased daughter, Sallie.

His daughter Mattie married Frank de S. Benzinger, who predeceased her. She died January 8th, 1896, leaving surviving her three children, Frank de S. Benzinger, Jr., John Carson Benzinger, and Annie B. Griesser, all of whom are now living.

His daughter Bertha married George N. Webster, and died December 12th, 1891, leaving surviving her husband, who is now deceased, and one daughter, Bertha M. Bradley, now living.

His daughter Annie first married a Mr. Billingsley, by whom she had one son, John C. Billingsley. She married a second time William T. Hutchins, by whom she had no children, and died March 16th, 1930, leaving her husband surviving, and also two grandchildren, the children of her deceased son John C. Billingsley, namely, John Carson Billingsley and Dorothy M. Billingsley, both infants. The mother of these infants, Marie Billingsley, is also alive at this time.

His son, John Carson, Jr., died about January 16th, 1892, intestate, and without issue, he having married one Annie C. Barkley, who subsequently married Thomas J. Lindsay and died about October 21st, 1927.

On June 5th, 1930, the descendants of the testator's childred, other than his daughter Annie, filed a bill of complaint against the two infant grandchildren of the daughter Annie,

and David S. Carter, substituted trustee. The prayers of the bill are: (1) That the court construe the fifth clause of the will of the said testator; and, if it be found by a true construction of said clause that the trust therein created came to an end upon the death of the said daughter Annie, (2) that a decree may be passed for the sale of the said real estate and securities; (3) that a trustee may be appointed to make said sale; (4) that the proceeds of said sale, together with the cash in hand, may be distributed among the persons entitled thereto according to their respective rights and interests; and (5) for general relief. The defendants filed their answers, admitting the facts set forth in the bill, but disputing and denying the construction of the will as contended for by the complainants. The lower court construed the will in conformity with the complainants' contention, and decreed that the property be sold for the purpose of partition among them. The appeal here is from that decree.

The two propositions contended for by the appellants are: First, that the provisions of the will creating and continuing the trust estate are void as violative of the rule against perpetuities; and, second, that the words "child or children," as used in the fifth clause of the will in respect to the daughter Annie's share, should be construed as including "grandchildren."

Considering these points in the order stated, first, Do the provisions of the will violate the rule against perpetuities? It is evident from the whole will that the testator, at the time of its drafting, had in mind this rule, and studiously attempted (we think successfully) to avoid its violation. By the fourth clause of the will the testator gave and devised the legal title to the whole of his residuary estate to Thomas M. Lanahan and John Carson, Jr., "absolutely and forever, in trust" for the purposes following. He divided the trust estate into four equal parts, which equal parts are disposed of by the fifth, sixth, seventh and eighth items of the will. By the fifth item one-fourth thereof was devised in trust for

the daughter Annie for life, "for her sole and separate use, free of all marital right and control whatsoever, and after her death in trust absolutely for her children, subject as thereinafter stated." The second paragraph of this clause provides: "Should Annie die without leaving a child or children living at her death, or should such child or children all die within twenty-one years of Annie's death, then I give and devise said one-fourth to Mattie L., John and Bertha upon the same trusts, and the same extent, and in the same manner, as I have provided for them in the Sixth, Seventh and Eighth clauses of this my will." The third paragraph of this clause provides: "Annie's children to enjoy the interest and income of said one-fourth during said twenty-one years."

It will thus be seen that in the first paragraph of the fifth clause his daughter Annie was given a life estate in trust in one-fourth part of the residuary estate, and after her death absolutely for her children, subject to the conditions and contingencies contained in the second paragraph of said clause. It is true that the language used in the latter part of the first paragraph of this clause is, "And after her death in trust absolutely for her children, subject as hereinafter stated." The words "in trust" do not apply to the absolute estate given to her children, but are intended to apply so as to continue the trust for a subsequent period of twenty-one years from Annie's death, and in further trust in the event the limitation over becomes effective, which limitation is that all of the children of Annie should die within the said period of twenty-one years. In other words, there was a suspension of the absolute enjoyment of the principal for the period of twenty-one years, during which time the devise to Annie's children might be defeated by the death of all of said children.

It is also clear that the testator recognized the possibility of question as to the right of Annie's children to the income of the one-fourth part of the residuary estate during the twenty-one-year period following Annie's death; and to ob-

viate such question he expressly provided in the third paragraph of the fifth clause that Annie's children should enjoy the interest and income from said one-fourth during said twenty-one years. In the event Annie left no children at the time of her death, or all of her children died during the period of twenty-one years following her death, the one-fourth part of the residuary estate considered in the fifth clause was given and devised to the testator's three remaining children, Mattie, John and Bertha, to be added to the one-fourth part similarly devised to each of them by the sixth, seventh and eighth clauses of the will, upon the same trusts and in the same manner as provided in the fifth clause; that is to say, upon the death of Annie without children living at her death, or if all of her children died within twenty-one years after her death, this one-fourth part of the residuary estate would still continue in trust for the benefit of the testator's surviving children, John, Mattie and Bertha, and their respective children. So that in no event could the trust continue longer than the life of the testator's last surviving child plus twenty-one years. In other words, as to Bertha's interest: She died in 1891, leaving one child, who still survives and has survived her mother by more than twenty-one years. Therefore there is no provision of the will for a contingency which would defeat the absolute title of Bertha's child after the expiration of the said twenty-one years, and she became at that time and is now entitled to the absolute possession thereof.

What we have said in respect to Bertha's child applies to the children of Mattie, who died in 1896. Twenty-one years thereafter would expire in 1917, and the one-fourth of the residuary estate devised to Mattie for life became an absolute indefeasible estate in her children in 1917. The one-fourth of the residuary estate which went to the son John by the express terms of the eighth clause of the will vested in him at the testator's death, but he was not entitled to the absolute enjoyment of the principal until he reached the age of twenty-five, which occurred shortly after the testator's

death. In respect to the one-fourth in which Annie was entitled to a life estate, she having died in 1930 without children living at the time of her death, the limitation provided for upon such contingency took effect, and this one-fourth vested absolutely in the surviving children of Bertha and Mattie, and the trust ended, because Mattie's and Bertha's children then held the property without any contingency which might defeat it being possible.

It thus appears that the trust created by the will must of necessity end at a period not more distant than twenty-one years after the death of the last surviving child of the testator.

The second contention of the appellants is that the words "child or children" used in the will, and particularly in the fifth clause thereof in respect to the fourth in which Annie had a life estate, include not only Annie's children, but her grandchildren. The chancellor concluded adversely to such a contention, holding that the grandchildren of Anne, the appellants here, were not included. We are in accord with that decision. There is nothing in the entire will and codicil which would indicate that the testator intended by the use of the words "child or children" to include grandchildren. On the contrary, the general intent, if any can be gathered from the will, indicates that the testator had in mind as the recipients of his bounty no descendant more remote than the children of his children.

The popular conception of the meaning of the words "child or children" is "immediate offspring"; that is to say, when we speak of A.'s children, the general, if not universal, acceptation is that we mean the immediate offspring of A. In *Miller's Construction of Wills*, sec. 85, p. 234, the author says: "In general: The legal construction of the word 'children' accords with its popular signification, designating immediate offspring and not more distant descendants. In all cases in which it has been extended to a wider range of objects, it was used synonymously with a word of larger import, such as the word 'issue' or 'heirs' or 'descendants.' "

In section 88, p. 240, the learned author further states: "Whether or not a gift to the child or children of a person may include the descendants of a deceased child or children of that person, such as grandchildren, depends upon the intention of the testator as disclosed by his will. The general rule, as previously stated, is that unless a different intention is disclosed by the will, the word 'children' means 'immediate offspring' only, and therefore does not include grandchildren." In *Schouler's Law of Wills and Administration,* p. 253, sec. 533, it is said: "Of 'children,' we may observe that the popular and legal senses of the word are in accord. A gift to the 'children,' of a person means, therefore, presumably, one's immediate offspring, and does not extend to 'grandchildren'; while 'grandchildren,' in like manner, is confined to the immediate offspring of offspring, and does not embrace 'great-grandchildren.' " "It is a general rule of common law that the words 'child' and 'children' do not in their natural sense and proper signification include a grandchild or grandchildren, and are employed in contradistinction to the terms 'heirs,' 'heirs of the body,' 'bodily heirs,' 'issue,' or more remote descendants; but this rule *is* subject to some exceptions where it is apparent that it was intended to give the terms a more extended signification. These exceptions are perhaps generally and universally confined to cases where it was necessary so to hold in order to give effect to the words of the instrument, or to the evident intention of the party executing it, as where a testator has shown by other language in his will that he does not use the word in its ordinary sense but intends it to have a more extended signification." 11 *C. J.* 753-755.

The case of *Turner v. Withers,* 23 Md. 18, presents striking similarity to the case now under consideration. In that case John Calder divided his property into six parts, and devised and bequeathed one part to his wife and the remaining five parts to his five children, his son, George, and daughters Margaret, Mary, Sarah and Charlotte, during the term of their natural lives, to be equally divided among them.

The will then provided "that if my said son or either of my daughters shall die without leaving any children or descendants alive at his or her decease, the part or parts of my lands and estate devised to such child or children so dying, shall be equally divided between my remaining children during the term of their natural lives"; and further provided that "at the death of any of my said children, who shall leave any child or children alive at his or her decease, or any descendant of such child or children, the part of my lands which my child so dying shall be entitled to for his or her life, shall belong to, and I do hereby devise the same, unto the child or children of my child so dying, or to their descendants, as the case may be; if more than one, to be equally divided between them and to their heirs forever, *per stirpes,* and not *per capita.*" The testator died in 1808, and his son George died in 1809. Mary, one of the daughters, married, and died in 1852, leaving children and descendants of deceased children. The testator's daughter Margaret died in 1860, leaving no children or descendants. At the time of Margaret's death, there were surviving her two sisters, Sarah and Charlotte, as also children of her deceased sister Mary. The question was as to the disposition of the property in which Margaret had a life estate. The provision of the will was that in such contingency her portion should be equally divided among the remaining children of the testator. The contention of the children of the deceased daughter Mary was that they should share with the surviving children of the testator in Margaret's estate; that the words "remaining children" should be construed, not as meaning "surviving children" but as "other children," meaning all the other children of the testator named in his will. This contention was denied on appeal, and the court said: "The testator gives the remainder, upon the death of Margaret, to his 'remaining children for life.' The parties taking the remainder, take by purchase as devisees under the will, and must answer the description of the parties named as devisees, and it is clear that no one can take except a child of the testator. The chil-

dren of Mary Little do not answer this description, and cannot claim as devisees."

In *Demill v. Reid,* 71 Md. 175, 17 A. 1014, the facts were that John Willett made a will in 1857 by which he devised certain real estate to his son, Henry J. Willett, in trust for the use and benefit of his grandson, John Willett Belt, during the term of the grandson's natural life, and from and immediately after the decease of the said grandson, then in trust that the principal estate should go to and become the property of the child or children of the said grandson by him lawfully begotten, if any, their heirs, executors, administrators, and assigns, if more than one, to be equally divided between them as tenants in common; but, in case the said grandson should die without leaving a child or descendant thereof living at the time of his death, or in case he should have a child, children, or descendants of the same living at the time of his death, and such child, children, and descendants should all subsequently die under lawful age and without issue living at the time of his, her or their decease, then in trust that the said principal estate and property should go to and become the property of the children of the testator's son, Henry J. Willett, their heirs and assigns, to be equally divided between them as tenants in common. The testator died in 1860, and his grandson, John Willett Belt, who enjoyed the property during his life, died in October, 1886, without leaving a child or descendant thereof living at the time of his death. The testator's son, Henry J. Willett, died in 1877, having had six children, three of whom predeceased him; and of the three who predeceased him two died without issue or descendants surviving them, while the third, Mrs. Demill, left four daughters surviving her. Upon that state of facts, the question was: Did the four daughters of Mrs. Demill take the interest in the property which their mother would have taken had she survived the life tenant, John Willett Belt; or did it all go to the three children of Henry J. Willett who did survive the life tenant?

Judge Miller, speaking for the court, said: "As to the

character of the estates thus created, we have no difficulty. It is a clearly established general rule in the construction of wills that a limitation which may operate as a remainder shall not be construed an executory devise. Here there is, first, a life estate given to the grandson, Belt, and upon his death alternative contingent remainders in fee are limited. first, to the child or children of Belt, if he leaves any, which shall attain lawful age, or die before that time leaving issue, and, failing this, then to the children of the testator's son Henry. If Belt had left a child who attained the age of twenty-one, or died before that time leaving issue, the fee would have vested in such child or issue, and such vesting would forever have excluded any possible future interest in the children of Henry J. Willett. Their interest took effect only upon the failure of the preceding contingency. There are, therefore, here two contingent fees not limited to take effect the one upon or after the other, but the one to take effect to the entire exclusion of the other, and the falling out of the contingencies is to decide which of the two is to take effect. It is a case illustrating the statement made by *Fearne,* Rem. 373: 'However, we are to remember that although a fee cannot, in conveyance at common law, be mounted on a fee, yet two or more several contingent fees may be limited merely as substitutes or alternatives one for the other, and not to interfere, but so that one only take effect, and every subsequent limitation be a disposition substituted in the room of the former, if the former should fail of effect. Thus in the above cited case of *Loddington v. Kime,* 1 Ld. Raym. 208, it was held that the first remainder was a contingent remainder in fee to the issue of A., and the remainder to B. was also a contingent fee, not contrary to or in any degree derogatory from the effect of the former, but by way of substitution for it. And this sort of alternative limitation was termed a contingency with a double aspect.' * * * Other authorities to the same effect are the cases of *Clagett v. Worthington,* 3 Gill. 83; *Woollen v. Frick,* 38 Md. 428; *Herbert v. Selby,* 2 B. & Cr. 926; *Waddell v. Rattew,* 5 Rawle (Pa.)

231. As to the other question there is more difficulty. Mrs. Demill was one of the children of Henry J. Willett, was *in esse* at the death of John Willett, the testator, but died before the happening of the contingency, which made the substituted contingent remainder in fee to the children of John Henry Willett take effect or vest. Did she take an interest which was transmissible to her children? As a general rule, a contingent remainder of inheritance is transmissible to the heirs of the person to whom it is limited, if such person chances to die before the contingency happens. *Fearne* 364. Chancellor Kent states the rule thus: 'It is settled that all contingent estates of inheritance, as well as springing and executory uses and possibilities coupled with an interest, where the person to take is certain, are transmissible by descent, and are devisable and assignable.' 4 *Kent,* Comm. 262. * * * The rule by its terms applies where the person to take is certain,—that is, where an individual is named or definitely described as the party to take when the contingency happens; and of this the case of *Hambleton v. Darrington,* 36 Md. 435, affords an illustration of like character as the other Maryland cases to which reference has been made. *Snively v. Beavans,* 1 Md. 208; *Buck v. Lantz,* 49 Md. 444. Now, does this rule apply to a case where there is a limitation by way of contingent remainder to children as a class, and where there are those of the class answering the description, and capable of taking at the time the contingency happens and the estate arises and becomes vested? * * * The word 'children' does not ordinarily denote 'grandchildren,' and is not to be so construed, unless the will clearly manifests that such was the intention of the testator. It is quite impossible to say in this case that the testator meant that grandchildren as well as children of his son should share in the estate when the contingency which he had prescribed fell out. Nor is there any necessity for putting such a construction on his language, for there are children here to take, and in such a case Sir William Grant said: 'I never knew an instance where there were children to answer the

proper description, that grandchildren were permitted to share along with them; although, where there is a total want of children, grandchildren have been let in under a liberal construction of the word "children." ' *Orford v. Churchill,* 3 Ves. & B. 69. It seems to us to be clear law, as well as good sense, that in a case like this, where there is an ultimate limitation upon a contingency to a class of persons plainly described, and there are persons answering the description *in esse* when the contingency happens, they alone can take. The Supreme Court of New Hampshire, in a very well-considered case, and after a careful review of the authorities, said: 'The result, then, of the authorities, in our opinion, is that if there be a bequest to one for life, and then to the children of the testator or the survivors of them, those children will take who at the death of the tenant for life answer the description in the will, to the exclusion of the representatives of those who are then dead. This, we think, is the rule when the bequest is in these terms, and nothing more; subject, of course, to be controlled by a manifestation in the will of a different intention.' *Hill v. Bank,* 45 N. H. 270. * * * So in this case, we hold that no one can take as devisee under this limitation except those who were children of Henry J. Willett at the time the contingency happened."

In many cases of survivorship the rule has been applied that a gift to children does not include grandchildren, as the latter do not answer the description of children. *Miller's Construction of Wills,* p. 781, note 11; *Taylor v. Watson,* 35 Md. 519; *Kemp v. Bradford,* 61 Md. 330; *Anderson v. Brown,* 84 Md. 261, 35 A. 937; *Wilson v. Bull,* 97 Md. 128, 54 A. 629; *Merowitz v. Whitby,* 138 Md. 222, 113 A. 651; *Stahl v. Emery,* 147 Md. 123, 127 A. 760. It may be stated that the general rule is firmly settled to the effect that persons answering to the description "child or children" are immediate offspring, sons and daughters only, and therefore the term does not include grandchildren; upon which is engrafted the equally recognized and settled exception that, if there is an intention clearly gathered from the language

of the instrument that the word "children" should include grandchildren, then grandchildren will be included.

Applying these principles to the case now before us, it is clear that by the terms of clauses four, five, six and seven of John Carson's will the testator created a life estate in his daughter Annie, with a contingent remainder with double aspect, or, in other words, alternative contingent remainders. Under the first contingency, namely, Annie's leaving a child or children (immediate offspring) surviving her at the time of her death, and the further contingency that they should not all die within the period of twenty-one years from Annie's death, then such immediate offspring would take the remainder in fee. If, however, the contingencies just above stated did not occur, in that event the property went over to John, Mattie and Bertha, as set out in the fifth clause of the will, and became vested in accordance with the terms of the sixth, seventh and eighth clauses. This conclusion is in accord with the decree appealed from, and the same will be affirmed.

*Decree affirmed, costs to be paid out of the estate.*