## ESTATE OF HELEN P. CHILDS *v.* JOSEPH C. HOAGLAND, ET AL.

[No. 35, January Term, 1943.]

*Decided March 17, 1943.*

The cause was argued before SLOAN, DELAPLAINE, COLLINS, MARBURY, GRASON, and MELVIN, JJ.

*Nicholas J. Chase,* with whom were *Albert L. Cox* and *William E. Leahy* on the brief, for the appellant.

*F. Bernard Welsh,* with whom was *Clark H. Hebner* on the brief, for the appellees.

MARBURY, J., delivered the opinion of the Court.

This case involves the construction of the residuary clauses of the will and codicil of Helen P. Childs of Montgomery County, Maryland. It arose through the filing of a petition by the executor in the Orphans' Court of Montgomery County, in which he stated that question had arisen as to what property was to be distributed under the several paragraphs of the residuary clause, and that it would depend upon the determination of this question who would get the property mentioned in these paragraphs. Appropriate parties were made, and appeared at a hearing before the Orphans' Court, at which documentary evidence was offered, and an agreed stipulation of facts was filed. The Orphans' Court then passed the order determining what passed and to whom under the residuary clauses. From that order this appeal is taken.

The Orphans' Courts of this State have the power, under Sections 243 and 245 of Article 93 of the Code, to determine who are legatees under a will, and what is given to such legatees. The determination of such questions necessarily involves a construction of the will. That was determined as early as *Pole v. Simmons,* 45 Md. 246, and that decision has been followed by a num-

ber of others, including *Gallagher v. Martin*, 102 Md. 115, 62 A. 247; *In re Hagerstown Trust Co.*, 119 Md. 224, 86 A. 982; *Redwood v. Howison*, 129 Md. 577, 99 A. 863; *Boland v. Ash*, 145 Md. 465, 125 A. 801; *Collins v. Cambridge Hospital*, 158 Md. 112, 148 A. 114; *Longerbeam v. Iser*, 159 Md. 244, 150 A. 793. The case before us comes within the principles laid down in these decisions. The Orphans' Court of Montgomery County had jurisdiction to determine the question raised in the executor's petition.

This question is the determination of what passed under Item XVII (a) of the testatrix' will as modified by Item I of her codicil When that question is determined, the question of who is to get her residuary estate follows automatically. The reason for this is that she divided her residuary estate into two parts, Item (a) being concerned with the part which she received from a specific source, and Items (b) and (c) bequeathing the balance. Different legatees received the bequests in the three subdivisions. If certain property is found to pass under subsection (a), it will go to those named in that subsection. If, on the other hand, it is determined that it does not so pass, then it will go to those named in subsections (b) and (c).

The testatrix by Item XVII, devised and bequeathed all the rest, residue and remainder of her property and estate, real and personal, of whatever kind and wheresoever situate of which she dies seized and possessed, or was entitled at the time of her death, in the following way:

"(a) Any property, real or personal, to which I may be entitled at the time of my death, from the estate of my great-grandfather, Haynes L. Porter in equal shares, unto those who may survive me of my cousins, Nellie A. Porter, Grace Porter, Rosa P. Hoagland and Alice P. Templeton, all hereinbefore mentioned, the issue, however, surviving at my death of any of them who may predecease me, to take, *per stirpes*, the same part, share or

interest which the deceased ancestor would have taken if surviving me;"

The remainder of her residuary property is devised two-thirds by subsection (b) to her cousins, Caroline Childs and Lowrie Childs, and one-third by subsection (c) to two other cousins, Grace Watson and Helen M. Perkins. There are some provisions and contingencies mentioned in these subsections, but it is not necessary to consider them, nor it is necessary to relate how other parties have become substituted in the case in place of some mentioned in the will by reason of death, inheritance, etc. The stipulation of facts shows that the parties mentioned in subsection (a) are descendants of the testatrix' grandfather, Haynes L. Porter (erroneously called great-grandfather in the will). They are referred to by counsel as the Porter cousins, a designation which is properly descriptive, and which we will adopt for the purposes of this opinion. Likewise, those entitled under subsections (b) and (c) are cousins of the testatrix on her father's side, he being Thomas S. Childs. They are no relation to Haynes L. Porter, and will be referred to as the Childs cousins.

The testatrix by Item I of her codicil modified subitem (a) of Item XVII of her will by directing that such sub-item should not include certain accumulations of income. Item I reads as follows:

"Item I: I hereby modify sub-item (a) of Item XVII of my last will and testament aforesaid, by providing that the property and estate covered thereby, and to which I may be entitled at the time of my death, from the estate of my grandfather, Haynes L. Porter, shall not include such of my interest in the said estate as may represent undistributed accumulations of net income or any income therefrom due me at the time of my death, but such sub-item (a) shall include any interest of mine in the said estate, excluding the aforesaid income, which I may have the power to dispose of by testamentary disposition."

It so happens that the estate of the testatrix is entitled to certain shares of a trust fund coming to her directly from her grandfather, Haynes L. Porter, and certain other shares of the same fund coming to her out of the Porter property, but reaching her indirectly through the estates of her grandmother and her two sisters. The Porter cousins claim that they are entitled to all of this property, originating from the Haynes L. Porter estate, whether it came to the testatrix directly or indirectly. The Childs cousins claim that only the property coming to the testatrix directly from the Haynes L. Porter estate passes to the Porter cousins under subsection (a), and that the property which the testatrix received indirectly, through other estate passes to them, the Childs cousins, under subsections (b) and (c). The Orphans' Court decided in favor of the Porter cousins and so decreed. This appeal is taken by the Childs cousins.

Haynes L. Porter died February 10, 1873, a resident of Hartford, Connecticut, and testate. He left the residue of his estate in trust for the benefit of his wife, Lucinda B. Porter, during her life. Upon her death, one-half was to be given to his son absolutely, and the other one-half was to be held by the trustees to pay over the interest and income to his three grandchildren, the children of his deceased daughter, Mary E. P. Childs, and to the survivor or survivors of them and their heirs. These grandchildren were Mary Lowrie Childs, who died October 13, 1930; Fannie Graham Childs, who died February 18, 1932; and Helen P. Childs, the testatrix, who died October 3, 1938. Haynes L. Porter, therefore, was the grandfather of Helen P. Childs, as correctly stated in the codicil of her will, and not the great-grandfather, as stated in subsection (a) of Item XVII of her will. The Brooklyn Trust Company had become substituted trustee of the trusts under the Haynes L. Porter will. At a Surrogate's Court for the County of Kings, State of New York, on December 17, 1941, there was filed a decree as a result of a petition of the trustee for con-

struction of the Porter will. Such construction became necessary after the death of Helen P. Childs, the last surviving grandchild. The Surrogate determined that Haynes L. Porter died intestate in respect to the corpus of the trust left to the grandchildren. He decreed that the estate of Helen P. Childs should receive a one-ninth undivided interest, the estate of Mary Lowrie Childs, a one-ninth undivided interest, the estate of Fannie Graham Childs a one-ninth undivided interest, and the estate of Lucinda B. Porter, a one-third undivided interest. It appears from the stipulation that Mary Lowrie Childs left her estate to her sisters, Fannie Graham and Helen P., and the survivor. Fannie Graham Childs left her estate to her sisters Mary Lowrie and Helen P. Childs equally. Helen P. Childs was also an heir of her grandmother, Lucinda B. Porter, who died intestate July 18, 1874. Her estate therefore became entitled to a one-eighteenth share of the Haynes L. Porter corpus through her grandmother's estate. This was also the case with the estates of Mary Lowrie Childs and Fannie Graham Childs. The result of this situation, is that the Helen P. Childs estate will receive one-ninth of the Haynes L. Porter corpus directly from the Haynes L. Porter estate, and, indirectly, will receive one-eighteenth through the Lucinda B. Porter estate, one-eighteenth under the will of Mary Lowrie Childs, one-thirty-sixth under the will of Mary Lowrie Childs from her part of the Lucinda B. Porter estate, one-eighteenth under the will of Fannie Graham Childs, one-thirty-sixth under the will of Fannie Graham Childs coming to the latter through Mary Lowrie Childs and Lucinda B. Porter, and one-ninth plus one-eighteenth under the will of Fannie Graham Childs coming to the latter from the estates of Haynes L. Porter and Lucinda B. Porter. This adds up to one-ninth inherited directly, and fourteen-thirty-sixths inherited indirectly through the other estates mentioned. The will of the testatrix was made August 13, 1932. Her codicil was made August 22, 1932. At the time of executing

these testamentary papers, it had not been determined what her interest was in the Haynes L. Porter estate. At that time, she was receiving the income from the entire trust estate. She died, as stated, in 1938, when she was seventy-five years of age. Until her death, there could be no determination of what was to become of the corpus of the trust estate from which she was receiving the income, inasmuch as the question of the disposition of this corpus could not arise until after she passed away. It is stated in the agreed statement of facts that the total amount coming to her estate both directly and indirectly from the Haynes L. Porter estate is approximately $34,000. This constitutes eighteen-thirty-sixths or one-half of the Haynes L. Porter trust estate, from which she had been receiving all the income. There is no question that one-ninth of the total trust, amounting to approximately $7,500, goes to the Porter cousins, so that we are concerned with the disposition of the balance, amounting to about $26,500. The gross value of the residue of the Helen P. Childs estate, exclusive of any of the Porter trust, which passes to the Childs cousins under Item XVII, subsections (b) and (c), is estimated at $27,000.

The sole purpose of construing a will is to determine what was the intention of the testator. That has been stated so many times that it has become a truism. Courts do not try to determine what a testator should have done. The object is to determine what he did. The necessity for a construction generally arises because of some unforeseen circumstances which were not known to the testator at the time of making the will. In such cases, courts do not try to determine what the testator would have done had the circumstances been known. All they can do is to apply the words of the will to the changed circumstances. Sometimes strange results are thus achieved, but it is the only way courts can proceed without making the testator's will over for him. In other words, the inquiry is not what should he have meant or

what would he have meant had he known, but what did he mean by what he said.

The courts, however, are not restricted entirely to the words of the will, but can and should put themselves in the position of the testator at the time of the making of the will. In that way, the intentions of the testator can be better ascertained than by the consideration of the dry words alone. There are other matters to which courts may turn for assistance, but as they are not involved in this case, we will not stop to enumerate them. A full discussion of general principles of testamentary construction is to be found in the case of *Darden v. Bright,* 173 Md. 563, 198 A. 431. In an even more recent case, *Robinson v. Mercantile Trust Co.,* 180 Md. 336, 24 A. 2d 299, 300, we quoted with approval the rule with respect to surrounding circumstances laid down in the early case of *Henderson v. Henderson,* 64 Md. 185, 1 A. 72, as follows: "The peculiar situation of this testatrix, and the relations subsisting between her and the recipients of her bounty, must therefore be considered in connection with the language of the document itself, in order that we may be fully enlightened in regard to the real motives and intent by which she was controlled in the execution of this will."

It is but seldom that controversies arise as to what is included in a bequest. The usual question is who is to take. In the case before us, the last question will be decided by the first, so we are brought face to face with the determination of what Miss Childs intended to include in the bequest made in subsection (a). It must be borne in mind, and kept before us at all times, that she had been for years the recipient of the income of her grandfather's trust. She may have thought she was entitled to dispose of the entire corpus. This is not probable, in view of the wording of her will, which indicates that she was in doubt what interest she had in it. There may have been discussions between her and her lawyer as to her precise interest, but we have no evi-

dence whatever of this. It is likely she knew there was some uncertainty about it, because of the way in which she expressed herself.

At the time of making her will she was without any near relatives. She had cousins on both sides of the family, and so far as we are informed, she was on friendly terms with them all. Indeed, the will indicates that she was, because she made some personal bequests to different ones on each side. She left many bequests to charity, and left her home in Chevy Chase and its contents for the use of a missionary society, with a request, however, that if a boarding home could not there be maintained for retired missionaries, ministers and physicians, and the society found it necessary to sell the contents, then her cousins on both sides should be notified, so that they might have an opportunity to purchase any of the articles they might wish.

The Childs cousins, appellants here, contend that a strict construction should be given to the words of her will, that "from" the estate of her grandfather means directly from and not through any other agency. They say that the further elaboration of subsection (a) in the codicil strengthens this conclusion because of the statement that the bequest is of "any interest of mine in the said estate." They point to the fact that by the Surrogate's decree, the testatrix' estate only received one-ninth of the trust fund, and that the other portions which ultimately came to her estate were distributed to the estates of Lucinda B. Porter, Mary Lowrie Childs and Fannie Graham Childs, through which estates they must pass with possible deductions for court costs, commissions and inheritance taxes before they reach the estate of Helen P. Childs. They quote a number of decisions from other jurisdictions as to the meaning of "from." One of these is *Gardner v. Collins* 2 Pet, 58, 91, 7 *L. Ed.* 347. In this case, the Supreme Court was construing the intestate law of the State of Connecticut. The opinion is written by Mr. Justice Story. In that opinion is

found the following statement: "It is true, that in a sense, an estate may be said to come by descent from a remote ancestor, to a person upon whom it has devolved through many intermediate descents. But this, if not loose language, it [is] not that sense which is ordinarily annexed to the term. When an estate is said to have descended from A to B, the natural and obvious meaning of the words is, that it is an immediate descent from A to B. If other words of [if] a statute should seem to require another and more enlarged meaning, there would be no absolute impropriety in adopting it; but if the true sense is to be sought from the very terms, *per se*, that which is the usual sense would seem most proper to be ·followed. It is not for courts of justice to indulge in any latitude of construction, where the words do not naturally justify it; and there is no express legislative intention to guide them."

Another case relied upon is a Pennsylvania case in which the Intestate Act of the State of Pennsylvania, 20 P. S., Sec. 1 et seq., is being construed with especial reference to the rights of an adopted child. The wording of the statute was "from and through" and the court there distinguished the meanings of these two words in the following way: "The word 'from' contemplates the death of either the adopted child, or the adoptive parent, the statute giving the survivor the right to inherit from the deceased. But the word 'through' extends the inheritance rights of both the adopted child and the adoptive parent to those arising by virtue of representation of each other for purposes of devolution, thereby qualifying them to inherit, not merely from one another, but from one another's relatives and kindred through the channel left open by the death of either." *In re Cave's Estate*, 326 Pa. 358, 192 A. 460, 463.

These and similar decisions involve the construction of statutes to which a different rule applies from that applicable to the construction of wills. We do not feel obliged to construe the word "from" in as strict a sense

as it was construed in the cases quoted, if we find from the will and the surrounding circumstances an intention that it was not so meant. The Porter cousins set up the fact that the testatrix showed a disposition throughout her will to give back to the Porter side of her family what originally came to her from their ancestors, and to the Childs side what originally came from theirs. They cite, in this connection, other clauses of the will. By Item IV, such flat silver as is marked "H. L. P." (obviously Haynes L. Porter) is given to the Porter cousins, while by Item V, one of the Childs cousins is given an old-fashioned desk which formerly belonged to the Childs grandmother of the testatrix. These bequests, however, are only slight indicia of any such general intent as the Porter cousins claim. A much stronger inference can be drawn from Item I of the codicil. In that item the testatrix clearly distinguishes between the income unpaid and due her from the Haynes L. Porter trust and the corpus of that trust. The trust was invested in mortgages, and probably some of the interest was in arrears. All of this income which she should have had during her lifetime she specifically excepts from subsection (a). This automatically puts it in the other residue of her estate and gives it to the Childs cousins. She then says that her bequest "shall include any interest of mine in the said estate, excluding the aforesaid income, which I may have the power to dispose of by testamentary disposition." Laying aside for the moment the discussion of the wording used, this codicil seems to indicate that she desired the Childs cousins to have only the income, because if she had intended them to have any of the corpus, the income from that would have followed naturally. She intended the corpus to go one way and the income another.

Coming back to the wording used, interest in an estate, which the testatrix has the power to dispose of by testamentary disposition, is a much broader description than that contained in subsection (a). The fourteen-thirty-

sixths which the estate of the testatrix received through other estates was, at the time of her death, a part of the estate of Haynes L. Porter, just as was the one-ninth her estate received directly. Her estate did not get the fourteen-thirty-sixths directly from the Haynes L. Porter estate. It may be said that she acquired it fortuitously, by virtue of her relationship to her grandmother and her sisters. Nevertheless, the testatrix knew about the wills of her sisters, she knew she was entitled to receive all of their estates, and she probably knew what is set out in the stipulation that her grandmother left no will and had no estate. She also probably knew that she would share in any estate coming to her grandmother, as one of her heirs. If she knew that, she also knew that her sisters bore the same relationship to her grandfather and her grandmother that she did, and that her estate would get whatever might come to their estates. Whatever might come was, at the time of her death, undoubtedly a part of the Haynes L. Porter estate, and she had the power to dispose of it by her will. There seems to be, therefore, a reasonable basis for holding that the fourteen-thirty-sixths could, by the ordinary and customary usage of words, be called interests of hers in the Porter estate, and that they were intended by her to be included in the provisions of subsection (a) and the codicil.

The result of that conclusion, which seems to us to be the most reasonable, considering all the surrounding circumstances, and considering what the testatrix said, is to give all of the property which the estate of the testatrix received, either directly or indirectly from the Haynes Porter estate to the Porter cousins. That is the conclusion reached by the Orphans' Court of Montgomery County, and the decree of that court will therefore be affirmed.

*Decree affirmed. Costs to be paid out of the estate of Helen P. Childs.*