HALIL SABIT *v.* SAFE DEPOSIT & TRUST COMPANY OF BALTIMORE, ET AL.

[No. 37, October Term, 1944.]

*Decided December 8, 1944.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, BAILEY and CAP-PER, JJ.

*Raphael Walter*, with whom were *Nyburg, Goldman & Walter* on the brief, for the appellant.

*Arthur W. Machen* for infant appellees, Halil Aziz von Scheidt and Omar von Scheidt.

*Niles, Barton, Morrow & Yost* and *Carlyle Barton* for appellee, Safe Deposit & Trust Co. of Baltimore.

COLLINS, J., delivered the opinion of the Court.

Alfred J. Ulman, of Baltimore City, died testate on October 13, 1906, survived by his widow, Clementine H. Ulman; a son, Jacob Ulman, and four daughters, Bertha U. Walter, Valerie H. Arnold, Alberta Ulman Sabit, and Nanine H. Sabit.

By his will executed on February 26, 1891, he devised and bequeathed his estate to his wife for life, she to receive four-ninths of the income and each child to receive one-ninth. The remainder after his wife's death was de-

vised and bequeathed to his five children equally with a provision that the shares of any of his children who might be under thirty-five years of age and unmarried be held in trust.

By the first and only codicil to the will executed on April 12, 1904, the disposition of his estate after his widow's death was revoked, and under the first, second, and third items of the codicil, after his wife's death, a one-fifth share was left absolutely to his daughter, Bertha Ulman Walter; a one-fifth share absolutely to his daughter, Valerie H. Arnold, and a one-fifth share absolutely to his son, Jacob A. Ulman. Clementine H. Ulman, the widow, died on February 8, 1927, and three-fifths of the estate was distributed absolutely to these three children who are now deceased and survived by issue. Two-fifths of the estate was held in trust under the terms of the codicil for the daughters, Alberta U. Sabit and Nanine U. Sabit.

The Safe Deposit & Trust Company of Baltimore, succeeding trustee under the will of the testator, being unable to determine the provisions of the fourth clause of the codicil, filed a bill of complaint in the Circuit Court for Baltimore City against all parties thought to have a possible interest in the estate, asking the Court to assume general jurisdiction of the trust and to construe the fourth clause of the codicil of the will. The parties were brought in either by summons, acceptance of service, order of publication, answers filed by counsel, or by service of process on the Alien Property Custodian at Washington as some of the interested parties are enemy aliens.

For a proper interpretation of the fourth clause of the codicil, it is necessary to quote it in full as follows:

"In trust to invest and to hold another fifth part and to collect the income therefrom arising and to pay the net amount thereof to my daughter, Alberta Ulman Sabit, wife of Aziz Sabit, for and during the term of her natural life, and from *and after her death to divide the corpus of her fifth part into as many shares as she may leave children living at the time of her death, and to hold and*

*to invest one each of such shares for each of her said children then living,* in trust, as follows: In trust to collect the income from the share of each of her children, who may be living at the time of my death and to apply the net amount thereof, or so much thereof as the said trustees or the survivor may deem proper, to its maintenance, education and support until it shall have attained the age of twenty-one years and then to pay over to it any previously accrued income that may not have been so applied, and thereafter to collect and pay over to it the net income of its share for and during the term of its natural life, and from and after its death to convey transfer and pay over the corpus of its share to the then living child, or children, and the then living descendants of any then deceased child, of such child, per stirpes and not per capita, share and share alike. And in trust to collect the income from the share of each of her children, who may be born after my death and living at the time of her death and to apply the net amount thereof, or so much thereof as the said trustees or the survivor may think proper to its maintenance, education, and support until it shall have attained the age of twenty-one years, and then to convey, transfer and pay over the corpus of its share, with any undisposed of income to such child absolutely.

"Should my said daughter, Alberta, die without leaving a child or children or descendants, then living, then I give, devise and bequeath her said one-fifth part to her sisters and brother then living and to the then living descendants of any of her then deceased sisters or brother per stirpes and not per capita share and share alike—the share thereof of my daughter, Nanine, or her child, children or descendants to be held by the said trustees upon the same trusts and subject to the same limitations as the fifth part hereinafter devised and bequeathed in trust for her. Should any child of said daughter, Alberta, living at the time of my death die without leaving any child, or children or descendants living at the time of its death, I give, devise and bequeath the share of such child so dying to the said trustees and the survivor and the heirs,

executors, administrators and assigns of the survivor, in trust for such child's surviving sisters and brothers, and the then living descendants of any then deceased brother or sister, upon the same trusts and subject to the same limitations as the share by this paragraph originally devised and bequeathed to them respectively, and should any such child die without leaving any child, children or descendants then living, then I give, devise and bequeath its share to my then surviving child or children, and the then living descendants of any of my then deceased children, per stirpes and not per capita share and share alike. Should any of the children of my daughter, Alberta, born after my death die before attaining the age of twenty-one years, without leaving a child or descendant, I give, devise and bequeath its share to the said trustees and the survivor and the heirs, executors, administrators and assigns of the survivor in trust for its surviving brothers and sisters and the then living descendants of any then deceased brother or sister per stirpes and not per capita, share and share alike. And should any such child of my said daughter Alberta, born after my death die before attaining the age of twenty-one years, without leaving surviving any brothers or sisters or descendants of a brother or sister, then I give, devise and bequeath its share to my then surviving child or children and the then living descendants of any of my then deceased children per stirpes and not per capita, share and share alike." (Italics supplied here.)

Testimony was taken in the case. It is shown that at the time of the execution of the original will in 1891, the testator's daughters, Alberta and Nanine, were unmarried and under thirty-five years of age. The daughter, Nanine, between the time of the execution of the will and that of the codicil, married Faid Sabit, an Egyptian. She died on May 24, 1940, without issue. In accordance with the provision of the fifth item of the codicil, as to which there is no dispute, the corpus of the share held in trust for Nanine's benefit was divided and distributed. A one-fourth part became a part of the corpus of the share

held in trust for her sister, Alberta Ulman Sabit, under the fourth clause of the codicil of the will aforesaid.

It also develops that between the dates of the execution of the original will and the codicil, the daughter, Alberta, married Aziz Sabit, an Egyptian. By that marriage she had three children: A daughter, Aziza, who married a German national, Max von Scheidt; a son, Halil Sabit, and a daughter, Alya Sabit. Halil and Aziza were born before the death of the testator. The date of birth of Alya is not shown. She predeceased her mother, dying without issue. Aziza von Scheidt, born about 1894, died about the year 1931, leaving surviving her two children, infants now under the age of twenty-one years, Halil Aziz von Scheidt, now about seventeen years of age, and Omar von Scheidt, now about fifteen years of age, German nationals, born after the death of the testator Halil Sabit, born about 1904, is now living, married with no children, and claims to be the sole beneficiary of the trust created for his mother, Alberta Ulman Sabit.

At the hearing held by the Chancellor, the claim of Halil Sabit to an interest for life in all of the trust created for Alberta Ulman Sabit was presented by his counsel, and the conflicting claim of Halil Aziz von Scheidt and Omar von Scheidt to one-half the trust created for Alberta Ulman Sabit was presented by counsel appointed for them by the Court. The Chancellor decreed in effect that the trustee divide the residuary estate held in trust for Alberta Ulman Sabit into two equal parts, one part to be held in trust for Halil Sabit during his life under the provisions of the codicil and that the other of said two equal parts be held in trust by the plaintiff to transfer and convey the same, together with all net income therefrom, to the children of Aziza Sabit von Scheidt, deceased, daughter of Alberta Ulman Sabit, namely, the infant defendants, Halil Aziza von Scheidt and Omar von Scheidt, their heirs, executors, administrators and assigns or to such person or persons as may be legally entitled to receive the same under the Trading with the Enemy Act, 50 U. S. C. A. Appendix Sec. 1 Et

Seq., as may be determined by subsequent order or decree of that Court. From that decree Halil Sabit appeals to this Court, claiming that he is entitled to a life estate in all of the trust now in dispute and not to one-half as decreed by the Chancellor.

Alberta Ulman Sabit, at the time of her death, was therefore survived by one son, Halil Sabit, and two grandsons, Halil Aziz von Scheidt and Omar von Scheidt, great grandchildren of the testator. The whole question in this case turns upon the provision in the codicil in which, after devising and bequeathing an equitable life estate to his daughter, Alberta Ulman Sabit, the testator directs the trustee: "And from and after her death to divide the corpus of her fifth part into as many shares as she may leave children *living at the time of her death.*" (Italics supplied here.) It is apparent and admitted by appellees that as Alberta left only one child living at the time of her death, viz., Halil Sabit, he is entitled to the whole for life (he having been born before the testator's death), and the two infant children of his sister, Aziza Sabit von Scheidt, who predeceased her mother, Alberta, would take nothing, if these words are literally construed. Appellees, however, contend that the words "living at the time of her death" mean, by what is known as stirpital construction, "living either personally or by representation through issue."

The doctrine of stirpital survivorship has been adopted in a number of cases by the English Courts and as far as we have been able to determine and from the excellent briefs submitted by the appellant and appellees, by only one Court in this country, that being in Kentucky in the case of *Birney v. Richardson*, 1837, 5 Dana 424, 35 Ky. 424. The Kentucky case seems to go much further than the English cases and as far as we have been able to determine, has not been followed in this country since it was decided over one hundred years ago. This is a rule of construction by which the Courts, in order to carry out the *intention of the testator* interpret the word "survivor" to mean "other" or "surviving either in person or by

stocks." *Doe v. Wainewright,* (1793), 5 Term. Rep., D. & E. 427; *Waite v. Littlewood,* [1872] L. R. 8 Ch. App. 70; *Cooper v. MacDonald,* [1873] L. R. 16 Eq. 258; *Wake v. Varah,* 1876, 2 Ch. D. 348; *Lucena v. Lucena,* 1877, 7 Ch. D. 255; *Curle's Trustees v. Miller,* [1922] Sess. Cas. (H. L. 15). In the case now before this Court, the words "then living" cannot possibly mean "other" because no children of Alberta had previously been mentioned or referred to. *Birney v. Richardson,* supra; *Wilmot v. Wilmot,* 8 Ves. 10. Therefore under that doctrine, the limitation to "children living at the time of her death" must either be construed literally or to mean "children living either in person or by stocks at the time of her death." An important difference between the instant case and those in which this doctrine has been applied in the English cases cited is that in those cases, the legatees whose survivors are to be determined have entered into possession or beneficial enjoyment of the legacy. The doctrine has then been applied in those cases to determine whether, when the legatee dies without issue, the surviving legatees shall take to the exclusion of issue of a predeceased legatee. In the case now bfore this Court, neither Aziza Sabit von Scheidt, the predeceased legatee, the mother of the survivors seeking to take, nor Halil Sabit nor anyone of that class ever entered into possession or enjoyment of the gift or a life estate therein. In the instant case there is an intervening life estate, while in the English cases hereinbefore referred to in which this doctrine has been applied, there was no such intervening estate. The case of *Cooper v. MacDonald,* supra, is illustrative of this. In that case testator made a series of specific devises upon trust for each of his children for life, with remainder to the children of such tenant for life and the heirs of their respective bodies as tenants in common in tail, with cross remainders between them, and failing such issue of the tenant for life in trust for the testator's other children equally, and the heirs of their respective bodies, as tenants in common, or if there should be only one of his said children "then living," in trust for that child and

the heirs of his or her body. He afterwards gave a share of his residuary real and personal estate upon such trust as should correspond with those declared concerning his specifically devised estate, which gift was followed by a provision for the event of any child dying in the testator's lifetime, leaving children. All of the children in question survived the testator and entered into a beneficial enjoyment of the devise. One of the questions before the Court in that case was: What was the effect of the gift over of the personal estate in the event (which had happened) of the deaths of more than one of the tenants for life without having children? The Court held in that case that the general scheme of limitations in the will obliged it to adopt and prefer the construction to carry out the intent of the testator that "then living" be given a stirpital construction to include "all the stock which should be then living." In the codicil before us, the framer did not use the word "survivor" in the clause to be interpreted, but the words "living at the time of her death" and so used as unmistakably to refer to Alberta's death. In some of the English cases referred to, notably *Cooper v. MacDonald*, supra, this question was not equally clear. This doctrine is adopted in all of these cases to carry out the interpreted intention of the testator.

It is further urged that because there is in the fourth clause a later provision reading: "Should my said daughter, Alberta, die without leaving a child or children or descendants, then living, then I give, devise and bequeath her said one-fifth part to her sisters and brother then living and to the then living descendants of any of her then deceased sisters or brother per stirpes and not per capita share and share alike * * *" there is a limitation over in default of issue, and therefore that a gift to issue is implied. Thus where property is settled upon A (Alberta) for life, with a gift over in case A (Alberta) should die without issue, there is an implied gift to A's (Alberta's) issue, if any. 3 *Restatement, Law of Property*, Sec. 272. We fail to see how this rule can be invoked here to imply a gift to issue, as in the case now before us the tes-

tator has made a disposition in the event that Alberta dies with issue. The case of *R. S. Construction Co. v. Nihiser*, 174 Md. 170, 197 A. 793, 794, is illustrative of a gift over in default of issue. In that case there was a devise by a testator to two nieces who were sisters and their respective representatives in equal proportions. On the death of either without living issue, in trust as to the share of the one so dying, "for the sole and separate use and benefit of the surviving sister and her representatives" and in case of the death of both sisters without leaving issue living at the death of the survivor, then in trust for testator's brother. One of the nieces died first and left issue still surviving, and devised the trust estate created for her and the share of her sister, who was living at the time of her death and who later died without issue, to trustees. This Court held in that case that the deferring of the devise over to the possibility of issue of either daughter living at the time of the death of the survivor implied that if there is such issue, the executory devise shall take effect. An important difference between that case and the case now before this Court is that in the instant case, the testator has made a disposition in the event that his granddaughter, Alberta, dies with issue.

Some stress has been laid upon the provisions in the fourth clause of the codicil following the provision under dispute heretofore set out, where the testator provides: "In trust to collect the income from the share of each of her children who may be living at the time of *my* death * * *" and later, "* * * each of her children, who may be born after *my* death and living at the time of her death." (Italics supplied here.) However, the words "at the time of my death" were evidently used to avoid a violation of the Rule against Perpetuities as stated in *Gray on Perpetuities*, 4th Ed., p. 191, for with respect to the share of each of her children "living at the time of my death," the trust is to continue throughout the life of the child and then the corpus of its share is distributed to the then living descendants of any then deceased child. With re-

spect to the share of each of her children "born after my death," the trust is to continue only until that child attains the age of twenty-one years, the limit of time permitted under the Rule against Perpetuities. *Perkins et al. v. Iglehart*, 183 Md. 520, 39 A. 2d 672, decided by this Court at this term.

In the case of *Turner v. Withers*, 23 Md. 18, testator devised his real and personal estate to his wife and five children, A, B, C, D, and E, share and share alike, as to each one-sixth part thereof for life, and in case of the death of either of said children, without children or descendants alive at his or her death, the part of said estate devised to such child or children so dying should be equally divided among the "remaining children" during their lives. In case of the death of any of said children leaving any child or children alive at his or her death, or any descendant of such child or children, the part of said lands, which such child or children so dying should be entitled to for his or her life, should belong to, and "I do hereby devise the same unto the child or children of my child so dying, or their descendants, as the case may be; if more than one, to be equally divided between them and to their heirs forever, per stirpes and not per capita." The widow who had renounced all her rights under the will died. A died in 1809 without issue and in 1811 B, C, D, and E made a division of said real estate between them, including the share of A. B, one of the daughters, having married L whom she survived, died in 1852 leaving children and descendants of deceased children among whom the one-fourth part allotted to her in division was divided. By the original division, part of the property became the property of C in severalty for life, with the remainder to those entitled under the will of the testator. C died leaving no children or descendants in 1860. The children of B claimed: 1. A share of C's property originally devised to C for life. 2. As to that part which accrued to B by the death of A, they contended that the words "remaining children" were to be construed as "other children," meaning all the other chil-

dren of the testator named in the will. The Court held in that case that by the words "remaining children" the testator intended those children who might remain alive at the death of the first devisee for life—surviving children; that this is the natural and ordinary meaning of the words and that they found nothing in the will to warrant any other interpretation. Further that the parties taking the remainder must answer the description of the parties named as devisees and it is clear that no one can take *except a child of the testator* and the children of B would not answer this description. The Court in that case was referred to *Doe v. Wainewright,* supra, involving the question of stirpital survivorship where the word "other" was substituted for "survivor," and also to the case of *Wilmot v. Wilmot,* supra. In *Anderson v. Brown,* 84 Md. 261, 35 A. 937, in which the cases of *Wilmot v. Wilmot,* supra; *Doe v. Wainewright,* supra; *Waite v. Littlewood,* supra; *Wake v. Varah,* supra, were referred to, this Court said that those cases were so decided because the will made it clear that the testator intended the issue of predeceased children to take or there was some other indication of manifest intention to oust the ordinary interpretation.

A similar ruling was made in the case of *Burden v. Burden,* 130 Md. 551, 553, 100 A. 776, where the testator left one-third of his property to his daughter, Evelyn, for and during her life and at her death, to her child or children surviving. Evelyn died leaving a son and two daughters living and two grandchildren who were the children of a son who predeceased his mother. The Court held that her share passed to her three living children to the exclusion of the widow and children of the son who had predeceased her.

In the case of *Stahl v. Emery,* 147 Md. 123, 127 A. 760, 761, the will devised the estate to the widow for life "and from and immediately after her death or marriage, the said estate is to be equally divided among our children, share and share alike." At the time of the execution of the will, he had four children. At his death and at the

time of the life tenant's death, there were two children alive and survivors of two deceased children. The Court held in that case that the word "children" is a technical word, primarily one of purchase, not of limitation, and imports only immediate descendants and that the devise was to the children of the testator as a class, the members of which were to be ascertained at the time of death of testator. See *Robinson v. Mercantile Trust Co.*, 180 Md. 336, at Pages 343, 344, 24 A. 2d 299; *Jarman on Wills*, 7th Ed., p. 1647; *Heald v. Heald*, 56 Md. 300, 311; *Cowman v. Classen*, 156 Md. 428, 446, 144 A. 367.

In the case of *Billingsley v. Bradley*, 166 Md. 412, 171 A. 351, 352, property was devised in trust for Annie for life and after her death to her children with the further provision "should Annie die without leaving a child or children living at her death, * * * then I give and devise said one-fourth to Mattie L., John and Bertha * * *. Annie died leaving no children living at the time of her death, but left two grandchildren, the children of a deceased son. The Court said in that case, at Page 419 of 166 Md., at Page 354 of 171 A., citing *Turner v. Withers*, supra: "The popular conception of the meaning of the words 'child or children' is 'immediate offspring'; that is to say, when we speak of A's children, the general, if not universal, acceptation is that we mean the immediate offspring of A." The Court went on further to say that as a general rule of common law, the words "child or children" do not in their natural sense and proper signification include grandchild or grandchildren, but that this rule is subject to some exceptions where it is apparent it was intended to give the term a more extended signification to give effect to the words of the instrument or to the evident intention of the party executing it showing that the testator did not use the words in the ordinary sense but intended more extended signification. *Orford v. Churchill*, 3 Ves. & B. 69; *Slingluff v. Johns*, 87 Md. 273, 39 A. 872. Further, at page 425 of 166 Md., at page 356 of 171 A: "It seems to us to be clear law, as well as good sense, that in a case like this, where there is an ultimate

limitation upon a contingency to a class of persons plainly described, and there are persons answering the description in esse when the contingency happens, they alone can take." *Miller on Construction of Wills,* Sec. 85, page 234.

In the case of *Phillips v. Heilengenstadt,* 173 Md. 290, at page 292, 195 A. 394, at page 395, where the gift was to children and it was sought to include grandchildren, the Court said: "As they are not children, but are grandchildren, of the deceased brothers and sisters, they could not be admitted to participation in the estate unless the context of the clause, or of the will, may give a broader than ordinary meaning to its designating terms. It has been definitely and repeatedly held by this Court that when there are persons answering to the description of 'children' in a devise or bequest, grand children are not to be included in that classification unless the will plainly manifests such an intention." *Taylor v. Watson,* 35 Md. 519; *Merowitz v. Whitby,* 138 Md. 222, 113 A. 651.

From the authorities above set forth, it appears clear that the words here must be given their literal construction unless the will shows a contrary intention on the part of the testator. The sole purpose, of course, in construing a will is to determine the intention of the testator. This has been stated so many times that as said in *Estate of Childs v. Hoagland,* 181 Md. 550, 557, 30 A. 2d 766, it has become a truism. In construing this will, this Court does not determine what the testator would have done had the circumstances been known. All that can be done here is to apply the words of the will to the circumstances as they exist. The inquiry here is not what testator should have meant or what would he have meant had he known, but what did he mean by what he said. In this interpretation the Courts are not restricted entirely to the words of the will, but can put themselves in the place of the testator at the time of making the disposition. In such a way the intention of the testator can be better ascertained than by considering the words alone. *Estate of Childs v. Hoagland,* supra. Of course,

there are other sources from which the Courts can get assistance, a full consideration of which is given in the case of *Darden v. Bright*, 173 Md. 563, 198 A. 431. The word "children" usually means immediate offspring and does not in its natural sense mean grandchildren. Living at the time of another person's death means simply, in its ordinary interpretation, remaining in life after the death of that other person. Where there is a limitation to a class upon a contingency and there are persons answering that description in being when the contingency happens, they alone take unless a contrary intention on the part of the testator appears.

The testator, when he executed the original will in 1891, provided for exact equality among his children with the exception that the share of his unmarried daughters should be held in trust until they married or became thirty-five years of age. At that time the two daughters, Alberta and Nanine, were unmarried and under the age of thirty-five years. After the execution of the will, Alberta and Nanine married aliens. After this event in 1904, he executed a codicil in which he left the share of his other children, Bertha, Valerie, and Jacob, to them absolutely after their mother's death, but provided that the share of his daughters, Alberta and Nanine, who had married aliens, be held in trust without giving them the privilege of disposing of any of the corpus of their share. Under the will, upon marriage, Alberta and Nanine would have received their share outright. It therefore appears that on account of the marriage of these two daughters to the husbands they married, the testator desired their money held in trust. As three of his children received their shares outright, there was certainly no intention for equality among testator's grandchildren and therefore, of course, less indication of intention of equality among his great grandchildren. His intent, therefore, seems to have been that his two daughters should be amply provided for during their lives, they having married alien husbands who might dissipate their inheritance. The words used are clear and plain.

It is reasonable, of course, to conclude that he was also interested in seeing that his grandchildren, the children of Alberta, some of whom at least were born at the time of the execution of the codicil, were provided for during their lifetime.

We cannot conclude from the words of the will and codicil and all other circumstances of the case that the testator intended that his great grandchildren, the appellees in this case, who were not born at the time of his death, should take half of their grandmother's share over Halil Sabit, the son of Alberta. To construe this will because of humanitarian considerations to provide for these two great grandchildren who might be expected to share in the estate would not be a construction of the will but the making of a new will for the testator. *Stahl v. Emery,* supra, 147 Md. 132, 127 A. 760. We must therefore conclude under the authorities above cited and under all the circumstances herein set out that the words of the codicil "* * * and from and after her death to divide the corpus of her fifth part into as many shares as she may leave children living at the time of her death * * *" must be literally construed and given their clear and plain meaning, and that the trustee shall continue to hold Alberta Sabit's share in trust for Halil Sabit, for and during the term of his natural life, with remainder as provided in the will and codicil of said Alfred J. Ulman, and the net income therefrom, subject to payment to estate of Alberta Ulman Sabit of apportionment of income accruing to the date of her death, shall be paid by said trustee, accounting from the day of the death of said Alberta Ulman Sabit, to said Halil Sabit during his life.

> *Decree reversed and case remanded for the passage of a decree to conform with the opinion herein expressed. Costs to be paid from the corpus of the trust created for Alberta Ulman Sabit.*