(Decided 26th June, 1878.)

SAMUEL J. ELDER, and others *vs.* OLIVER F. LANTZ and WILLIAM WHITE, Trustees, and CASSANDRA OLIVIA BUCK.

*Construction of a Will—Interpretation of words of description in a Will—Residuary Devises and Bequests.*

S. E. of the City of Baltimore, died in March, 1866, unmarried and leaving no issue. By his will he directed, among other things, that the sum of three thousand dollars, be invested by his executors and be held by them as trustees for Margaret Buck, infant daughter of his niece, Margaret Buck, deceased, for and during her life, so that she should receive the issues and income therefrom, and from and after her death, if she should have no children or descendants living at the time of her death, then in trust for her aunt, Olivia Buck, and her heirs absolutely ; and by a subsequent clause of his will, after various specific legacies, gave all the *rest, residue and remainder of his estate* to trustees, to be held in trust, as to one-third thereof for said Margaret Buck, minor, her children and descendants, *in the same manner and for the same purposes before prescribed in relation to the specific legacy given in trust for the said Margaret Buck, her children and descendants.* The said Margaret Buck died having no children or descendants living at the

time of her death. The appellants claimed that the testator did not dispose of the residue of his estate beyond the persons and their descendants named in the residuary clause, and did not intend to do so, and therefore as next of kin claimed the residue so given in trust for the said Margaret Buck. HELD:

1st. That the testator designed to settle his whole estate, real and personal, by the provisions of his will, in a certain fixed order of succession, selecting some of his next of kin, and excluding others.

2nd. That the residuary clause of the will covered both the real and personal estate of the testator not therein before devised and bequeathed, and conveyed the same in trust for the persons therein named and described, their children and descendants, and in default of such children and descendants, then as to one-third of said residue in trust for the appellee Cassandra Olivia Buck, and her heirs absolutely.

3rd. That the words *"their children and descendants,"* in the last sentence of the general residuary clause of the will, were not used as descriptive of the several persons among whom the residue was to be divided, but as descriptive of the specific legacies in which the *manner and purposes were prescribed* which were to be followed and observed by the trustees in relation to the residue.

4th. That if the intention of the testator had been to limit the disposition of the residue to the legatees named, their children and descendants respectively, the last words of the sentence *"in the same manner and for the same purposes, &c"* should have been omitted; they could only have been introduced for the purpose of preventing intestacy in the event of the failure of children or descendants of the persons named.

5th. That this is not a case of devise or bequest by implication, whereby the heirs-at-law or next of kin are excluded, but one in which the residue of the estate is devised in trust in express terms, and the *cestuis que trust* designated in terms of reference so clear that there can be no reasonable doubt of the objects of the testator's bounty.

APPEAL from the Circuit Court of Baltimore City.

The appeal in this case was taken by the complainants from the decree of the Court below, which adjudged that the defendants William White and Oliver F. Lantz, trustees under the will of Samuel Elder, deceased, should within a reasonable time transfer and pay over to the

Elder, *et al.* *vs.* Lantz and White, Trustees, *et al.*

defendant Cassandra Olivia Buck, absolutely, the sum of three thousand dollars directed by the will of the said Samuel Elder to be invested for Margaret Buck, for and during her life, with all the issues and increase therefrom since her death, and to convey, transfer and pay over to the said Cassandra Olivia Buck, upon her request, absolutely, one-third of the rest, residue and remainder of the estate of the said Samuel Elder, and of the rents, issues and income therefrom since the death of the said Margaret. Cassandra Olivia Buck was the same person as Olivia Buck mentioned in the will of the said Samuel Elder. The appellants abandoned their claim, as asserted in their bill, to the aforesaid three thousand dollars, admitting that the aforesaid Cassandra was entitled to the same by reason of the death of the said Margaret without children. The case is further stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, STEWART, BRENT, MILLER and ROBINSON, J.

*James W. Denny* and *S. Teackle Wallis,* for the appellants.

The testator did not dispose of the residue of his estate beyond the persons and their descendants named in the residuary clause, and did not intend to do so.

He does not name others than these, although he could have done so without changing the form, as "in trust for the hereinbefore named Margaret White, her children and descendants and the said charitable institutions," or "as to the other one-third for the hereinbefore named Margaret Buck, her children and descendants, and the said Olivia Buck," or "in the same manner, for the same purposes and for the same persons hereinbefore prescribed," &c., for "in the same manner, for the same purposes, and *subject to the same limitations* hereinbefore prescribed," &c.

He had four opportunities to make these additions if he had so intended it, after the words " children and descendants," which words he mentions four times in this residuary clause without any limitations over.

If the testator had omitted the words " in the same manner, *et seq.*," to the end, the residuary legatees would have taken absolutely. This was not the testator's intention, and these words " in the same manner," &c., were used to prevent the legatees from taking absolutely.

The words have ample operation without a strained construction to enlarge the meaning, so as to embrace the " Orphan Asylums, &c.," or " C. Olivia Buck;" for where the divisor speaks certainly, to enlarge the gift for aught appearing beyond the words he uses, would be as great an injury as to abridge his meaning.

" In the same manner and for the same purposes" designates the manner the trustees were to hold the legal estate, to invest the residue productively, with power to change the same, " for the purpose " of collecting the revenue and income thereof, " for the purposes " of paying the same to Margaret Buck, during her life, and " for the purpose " of conveying to her children and descendants thereafter in a designated manner, "*per stirpes* and not *per capita.*" The will is its own best exponent. *Hammett vs. Hammett, et al.*, 43 *Md.*, 307 ; *Taylor vs. Watson*, 35 *Md.*, 519.

In construing wills, conjectural renderings must not be indulged in by Courts, and words must not be supplied. *The Domestic and For. Mis. So. vs. Reynold's Executrices*, 9 *Md.*, 341 ; *Ridgely vs. Bond*, 18 *Md.*, 433, 448.

The words " in the same manner," " for the same purposes," " according to," " also," " like," &c., referring to other legacies or standards, are to be restricted as far as possible in their meaning, and do not revive the clause referred to farther than is necessary. *Williams vs. Mc-*

*Intire*, 8 *Ga. Rep.*, 34 ; *Shanley vs. Baker*, 4 *Ves.*, 732 ; *Leslie vs. Devonshire*, 2 *Bro. C. R* , 187, *marg.; Judd vs. Wyatt*, 11 *Ves.*, 483 ; *Paice vs. Archbishop of Canterbury*, 14 *Ves.*, 366 ; *Thomas vs. Thomas*, 3 *B. & C.*, 825 ; *Gloucester vs. Wood*, 3 *Hare*, 131.

The heir is favored in law, and is not to be disinherited, except by express words, or by such necessary implication as precludes a contrary supposition. *Saylor vs. Plaine, et al.*, 31 *Md.*, 158 ; *Ridgely vs. Bond*, 18 *Md.*, 433 ; *Berry vs. Berry*, 1 *H. & J.*, 417 ; *Creswell vs. Lawson*, 7 *Gill & J.*, 227 ; *Grant vs. Hapgood*, 13 *Pick.*, 164 ; *Hitchcock vs. Hitchcock*, 35 *Pa. St. Rep.*, 393 ; 2 *Powell on Devises*, 199 ; *Wigram on Wills, Part II*, 34, *&c.; Wylie vs. Wylie*, 1 *DeGex, Fisher & J.*, 410.

When a trust is not definitely pointed out, the trustees hold for the benefit of persons by law entitled. *Trippe vs. Frazier*, 4 *H. & J.*, 446 ; *Wilderman vs. The Mayor and City Council*, 8 *Md.*, 551.

The question is not as to whether a residuary legatee or devisee shall prevail or take as against the heir or next of kin. It is the preliminary inquiry, whether Miss Buck is a residuary legatee or devisee at all. If there be any presumption of law, as contended on the other side, that a testator does not intend to die intestate of any part of his estate, it is a presumption which applies only to cases where it is doubtful whether any particular property, real or personal, was meant to go to the residuary claimant or the legal representative. It is not a presumption that A. B. or any other person was intended to be a residuary devisee. That depends on the meaning of the residuary devise alone, and is helped by no legal presumptions. It is reasonable to argue that a man who makes a will does not intend to die intestate. It is not reasonable to infer that because he makes a residuary devise, he intends A. B. to take under it as against his heirs-at-law.

Elder, *et al. vs.* Lantz and White, Trustees, *et al.*

*Conway Robinson* and *Leigh Robinson,* for the appellee, Miss Buck.

The pretension in the bill of the appellants that "they are of right entitled to," and should have a decree for the sum of "three thousand dollars," has been abandoned. Therefore, the argument may bear on that no further than it affects the one-third of "all the rest, residue and remainder of" Samuel Elder's estate.

During the short but illustrious career of that great judicial character, Lord Chancellor TALBOT, he said, in 1735, as to a testator's words:

"If the will be general and that taking his words in one sense will make the will to be a complete disposition of the whole, whereas the taking them in another will create a chasm, they shall be taken in that sense which is most likely to be agreeable to his intent of disposing of his whole estate." *Ibbetson vs. Beckwith, Cas. Temp. Talb.,* 161.

Agreeable to such intent the one-third in question was in trust for Margaret Buck, (minor,) for and during the term of her natural life, and she having no descendants living at the time of her death, the said third has from that time been "in trust for her aunt Olivia Buck and her heirs absolutely."

In 1743 Lord HARDWICKE, said : "The word *manner,* as has been rightly argued, takes in everything. Suppose an estate be limited to one for life and to B on certain conditions and restrictions, and to C *in forma prœdicta,* this will take in every condition and restriction in the preceding limitation to B." *Chauncey, &c. vs. Graydon, &c.,* 2 *Atk.,* 620.

In the present case we have not only the word *manner,* which, as Lord HARDWICKE, said, "takes in everything," but we have also the word *purposes.* One-third "of all the rest, residue and remainder of" the testator's estate is given in trust for each of the three residuary devisees and

legatees, her children and descendants, "in the *same manner* and for the *same purposes* hereinbefore prescribed in relation to the specific legacies herein given, in trust for them respectively and their respective children and descendants."

In 1806, a clause bequeathing the residue of the testator's estate began thus: "To my niece, Mary Ann Williams, the sum of £5000 during life; after which to her children for their education and maintenance, and to be equally divided among them on their arriving at the age of 21 years. I give to my nephew, R. W. the sum of £3000 on the *same conditions* on his attaining the age of 21 years." The Master of the Rolls, (Sir WILLIAM GRANT,) said : "As to the question upon the interest of R. W. in the legacy of £3000, what can the words 'on the *same conditions*,' mean but in the *same manner?*" The decree was "that R. W. should have the interest of the legacy of £3000 during his life; and after his death the capital should go in the same manner as the preceding legacy to Mary Ann Williams was given." *Longdon vs. Simson,* 12 *Ves.,* 295.

As to the will before the King's Bench in 1809, Lord ELLENBOROUGH, C. J., said :

"The words a*s aforesaid* in the latter clause necessarily draw down and incorporate the words in the former clause; his son Spencer and his daughter Ann and their issue, &c., are to take, in the event of Hannah dying in possession unmarried and without issue, as tenants in common, *as aforesaid.* To say that these latter words only meant that they were to take as tenants in common in their respective moieties, is to give no meaning to the words *as aforesaid,* but to make them a mere useless repetition; but it is always desirable, if possible, to give effect to all the words of a will, and particularly when it enables the Court to give a uniform and consistent sense to the whole will." *Meredith vs. Meredith,* 10 *East,* 510.

Elder, *et al. vs.* Lantz and White, Trustees, *et al.*

The intent of such words is the more clear when they are (as in the present case,) in a clause as to a residue. *Monkhouse vs. Holme*, 1 *Brown's Ch. R*, 300, *marg.; Booth vs. Booth*, 4 *Ves.*, 408. As to a testator, "it must always be remembered that when the residue is given, every presumption is to be made that he did not intend to die intestate." *Philipps vs. Chamberlaine*, 4 *Ves.*, 59; *Milsom vs. Awdry*, 5 *Ves.*, 466; *Bolger vs. Mackell*, 5 *Ves.*, 513; *Crook vs. De Vandes*, 9 *Ves.*, 206; *Same Case*, 11 *Ves.*, 330. In 1817, the Master of the Rolls, (Sir WILLIAM GRANT,) said: "There is certainly a strong disposition in the Court to construe a residuary clause so as to prevent an intestacy with regard to any part of the testator's property." *Leake vs. Robinson*, 2 *Meriv.*, 386.

The rule has been often recognized in the United States. It was laid down in North Carolina in 1830 by RUFFIN, J., in *Reeves, &c. vs. Reeves, &c.*, 1 *Dev. Eq.*, 392; in Pennsylvania in 1833, by GIBSON, C. J., in *Stehman, &c. vs. Stehman*, 1 *Watts*, 475; and in the Supreme Court of the United States, in the opinion of the Court delivered by STRONG, J., in *Given, &c. vs. Hilton, &c.*, 95 *United States Rep.*, 591. The words of GIBSON, C. J., there referred to, may well be invoked and applied in the present case:

"No presumption of an intent to die intestate as to any part of the estate is to be made when the words of the testator will carry the whole; and certainly no such intention is apparent here."

It is utterly repelled by the ground taken in the answer, that the pretension is that Samuel Elder, though manifestly intending to dispose of his whole estate, has died intestate as to nearly all the rest, residue and remainder thereof.

Upon the whole the construction that will give effect to every word of the will, that is, according to the preceding cases, and is also supported by the decision of the Vice-Chancellor of England in 1843, (Sir LANCELOT SHADWELL,)

in *Hughes vs. Evans*, 13 *Sim.*, 496 ; 36 *Eng. Ch. R.*, and that of the Vice-Chancellor in 1845, (Sir J. L. KNIGHT BRUCE,) is that the testator Samuel Elder has disposed of his whole estate ; and by express devise and bequest, excluded the appellants from what they claim as heirs and next of kin. Therefore the decree of the Circuit Court is right and should be affirmed.

BOWIE, J., delivered the opinion of the Court.

The appellants, as heirs and next of kin of Samuel Elder, Esq., late of Baltimore City, deceased, filed their bill in the Circuit Court of that city, against the appellees, to procure a judicial construction of the residuary clause of the will of the deceased, so far as it relates to the trusts therein created in favor of Margaret Buck.

The testator died unmarried in the year 1866, without issue or lineal descendants, seized, and possessed of real estate, leasehold and personal property, having first executed his last will and testament, dated the second of May, 1863, which is the subject of this suit.

The will appears to be a careful and deliberate disposition of all the property of the deceased among a number of legatees, some of whom are connected by ties of friendship, others by consanguinity and affinity—including all his next of kin and heirs-at-law,—and in default of children or descendants of these, to certain charitable institutions therein named and described.

The instrument is drawn and executed in legal form ; its several bequests are couched in technical terms, used with general precision and accuracy, evidencing that the testator had the benefit of counsel, was fully aware of the force of the language used and the meaning, and relation of the several bequests to each other, and the order of succession established therein.

The heirs-at-law and next of kin of the deceased, (supposing him to have died intestate,) are the complainants,

viz., Samuel J. Elder, only child of a deceased brother, William White, only child of a deceased sister, Florence Knight, Marion E. Harwood, Mary Elder Beebe, Esther McK. Harwood, granddaughters of a deceased sister, who intermarried with Henry Harwood, and Margaret Buck, a great niece of the deceased.

The first bequest in the will is a direction to his executors, etc. "to set apart the sum of $3000, and to invest the same in some safe security, and as trustees, hold such security in trust for Samuel James Elder, minor son of his deceased brother James, until the said Samuel J. Elder shall attain the age of twenty-one years, or until he shall have issue," which ever shall first happen, then, in trust, to convey and assign such investment to said Samuel J. Elder absolutely forever ; "but, in case the said Samuel J. Elder shall die, in his minority, without issue, then in trust as to one-third thereof for his, the said S. J. Elder's mother absolutely ; and as to the other two-thirds for Margaret White and Florence Harwood, in the same manner as herein prescribed *in relation to the portion of my estate, specifically bequeathed in trust for the said Margaret White and Florence Harwood, respectively, and for their respective children and descendants.*"

The second bequest is, to Robert W. White, "*son of his old friend Henry White, deceased,*" $2000, in case he survives the testator, but if he be dead at his decease, then to the child, children or descendants of said Robert, then living, "*per stirpes*" and not "*per capita ;*" but if there be no such children or descendants then living, the sum of $2000 shall be invested and held in trust for his sister, Margaret White, and his sister-in-law, Anna White, etc., "for the same uses and purposes as the property specifically herein bequeathed in trust for them respectively."

The third bequest is, to Margaret White, "daughter of his old friend Henry White, deceased." After giving her sundry articles of furniture, he directs his executors

to invest $8000 in good security, and hold the same as trustees, in trust to collect the income and pay the same to Margaret White, during her natural life, and after her death, in trust for all the children and descendants which said Margaret shall leave living at the time of her death, to take "*per stirpes*" and not "*per capita*," but if the said Margaret shall leave no such children or descendants, then in trust for "The Union Protestant Infirmary of the City of Baltimore," "The Baltimore Humane Impartial Society" and "The Aged Women's Home;" "The Baltimore Orphan Asylum" and "The Baltimore Home of the Friendless," share and share alike.

The fourth bequest, after giving sundry articles of furniture to Florence Harwood, daughter of his nephew, James Harwood, directs his executors to set apart and invest $6000, to be held by them as trustees, to collect the income and pay the same to the said Florence Harwood, during her natural life, and to her children and descendants, etc., and in default of children or descendants, in trust for the charitable institutions before mentioned.

The fifth bequest is as follows, viz., "I direct that the sum of three thousand dollars be invested by my executors, and be held by them as trustees, in trust for Margaret Buck, infant daughter of my niece, Margaret Buck, deceased, for and during the term of her natural life, so that she shall receive the issues and income therefrom; and from and after her death, in trust for all her children and descendants, whom she shall leave living at the time of her death, to take '*per stirpes*' and not '*per capita*,' but if the said Margaret Buck shall have no children or descendant, living at the time of her death, then in trust for her aunt Olivia Buck, and her heirs, absolutely."

Then follow bequests of $2000 to be invested by the executors, and held in trust for Anna White, wife of his nephew, Wm. White; $6000 to be invested by the executors, and held in trust for Mary Elder Harwood, and

Esther McKinley Harwood ; the income to be paid to the
legatees for life, with remainder to their children and
descendants, with cross remainders as to the $6000, be-
tween the children of the said Mary and Esther, and in
default of children or descendants of said legatees, then in
trust for the charitable corporations before named.

Having given some directions immaterial to the ques-
tions before us, the will continues thus : " All the rest,
residue and remainder of my estate, I give unto Wm.
White, my nephew, and Oliver F. Lantz, and the survivor
of them, to be held by them in trust as to one-third thereof,
for the hereinbefore named Margaret White, her children
and descendants ; as to one other third for the herein-
before named Florence Harwood, her children and descend-
ants, and as to the other one-third, for the hereinbefore
named Margaret Buck, minor, her children and descend-
ants, in the same manner and for the same purposes here-
inbefore prescribed in relation to the specific legacies herein
given, in trust for them respectively, and their respective
children and descendants."

The executors were authorized, as trustees, to sell the
whole or any part of the testator's estate or property, held
at any time by them as executors or trustees, for the pur-
pose of settling the estate in the Orphans' Court, or for
the purpose of re-investment from time to time, whenever
considered judicious, and to execute deeds to carry out any
and all sales made by them.

The appellants claim " that the testator did not dispose
of the residue of his estate beyond the persons and their
descendants, named in the residuary clause, and did not
intend to do so."

The appellees insist, that the testator by his will, made
a complete and final disposition of his estate, under every
contingency, leaving nothing to be divided or distributed
among his heirs or next of kin, as in case of intestacy.
The primary objects of the testator's bounty as indicated by

Elder, *et al.* *vs.* Lantz and White, Trustees, *et al.*

the specific legacies and bequests before enumerated, were the son and daughter of his old friend, Henry White; his nephew, and great nieces,—who constituted his heirs-at-law or next of kin, in the event of his dying intestate. All and each of these receives a substantial pecuniary legacy.

The second class of beneficiaries, are the children, issue or descendants of the specific legatees; the third class, (with one exception,) are the charitable institutions, to which, in default of issue, children or descendants of the specific legatees, these legacies are bequeathed in remainder.

The exception to this general rule occurs in the bequest in trust for Margaret Buck, infant daughter of his niece, Margaret Buck, deceased; and from and after her death in trust for her children and descendants; but if the said Margaret shall have no children or descendants living at the time of her death, then in trust for her aunt Olivia Buck and her heirs absolutely.

Olivia Buck occupies in this specific bequest, the position which the charitable institutions occupy in all the other specific legacies—the third in succession, in remainder after the failure of children or descendants of his next of kin.

The testator has not upon the death of the legatees for life, without issue, created cross remainders among his next of kin, or bequeathed to them in remainder, except in the single item in trust for Mary Elder Harwood and Esther McKinley Harwood, between whose children cross remainders are created; manifesting clearly, is was not his general purpose, his next of kin or heirs should ultimately succeed to the specific legacies, upon failure of children or descendants of the legatees for life.

The general intent of the testator, as far as indicated by the special legacies, shows no leaning towards, or preference for, his next of kin or heirs, as a class. He has selected in some instances, strangers in blood in preference to them.

Elder, *et al. vs.* Lantz and White, Trustees, *et al.*

In the absence of the usual introductory words, showing an intention to dispose of all the estate, real and personal of the testator, of which he might die seized or possessed, it might perhaps be argued there was no language in the will preceding the residuary clause, which would embrace real estate.

All the preceding items are specific pecuniary bequests, in trust for the legatees named, their children and descendants. The question arising on the residuary and subsequent clause in the will is, not only who are the legatees or devisees, but what property is devised?

The language employed in the residuary clause is very broad and comprehensive, viz.,

"All the rest, residue and remainder of my estate," "I give, to be held by them in trust."

The word "estate" includes real and personal property, and when preceded by the unlimited phrase, "all the rest" embraces every species of property in quality, quantity, duration and degree. The subsequent and concluding clause of the will authorizing his executors, as trustees, to sell the whole or any parts of (my,) his estate held by them as executors or trustees, for the purpose of settling (my,) his estate in the Orphans' Court; and empowering them to execute *deeds to carry out any and all sales*, etc., implies necessarily, his real as well as personal property, was the subject of his testamentary disposition.

The testator designed to settle his whole estate, real and personal, by the provisions of his will in a certain fixed order of succession, selecting some of his next of kin, and excluding others.

It does not appear what claim, (if any,) Olivia Buck had on the testator's bounty, except her relationship to his great niece, Margaret. It is certain she stood so high in his regard, as to be preferred to his next of kin, in the final disposition of the legacy of *three thousand dollars* to Margaret Buck, upon failure of her issue; and it is fair to

presume that she would occupy the same relative position in the testator's favor, when he came to dispose of the remainder of the third of his estate bequeathed to Margaret Buck, upon the failure of children or descendants.

From these considerations we conclude that the residuary clause of the will covers both the real and personal estate of the testator, not thereinbefore devised and bequeathed, and conveys the same in trust for the persons therein named and described, their children and descendants; and in default of such children and descendants living at the time of their decease; then, as to two-thirds of said residue in trust, for " The Union Protestant Infirmary of the City of Baltimore," " The Baltimore Humane Impartial Society," and " The Aged Women's Home," " The Baltimore Orphan Asylum," and " The Baltimore Home of the Friendless," share and share alike, (assuming such corporations are in existence and capable of taking,) and as to the other one-third of said residue in trust, for the appellee, Cassandra Olivia Buck, " and her heirs absolutely."

The words " their respective children and descendants," in the last sentence of the general residuary clause of the will, are not used as descriptive of the several persons among whom *the residue was to be divided*, but as descriptive of the specific legacies, in which the manner and purposes were prescribed, which were to be followed and observed by the trustees in relation to the residue.

If the intention of the testator had been to limit the disposition of the residue to the three legatees named, their children and descendants, respectively, the last words of the sentence " in the same manner and for the same purposes," etc., should have been omitted. They could only have been introduced for the purpose of preventing intestacy, in the event of the failure of children or descendants of the persons named.

This is not in our judgment a case of a devise or bequest, by implication, whereby the heirs-at-law, or next of

kin are excluded, but one in which the residue of the estate is devised in trust in express terms, and the *cestuis que trust* designated in terms of reference, so clear that there can be no reasonable doubt of the objects of the testator's bounty.

The authorities cited by the appellants, to show that heirs are not to be disinherited by implication, are not controverted, but conceding their full force they are not applicable to the present case.

As every will is its own best exponent, we have endeavored to ascertain the meaning of this by studying its general features, analyzing its particular bequests, and extracting from the whole the true purpose of the testator.

The construction of wills is prolific of cases abounding in verbal distinctions incapable of being reduced to any general rule. The consequence is, authority may be found for almost any theory of interpretation. The learning and diligence of the counsel in this case has not failed to adduce a number of decisions in support of their respective views, which it would be difficult to reconcile; hence, we have preferred to base our decision in this case, not on any particular precedent, but upon the broad principle of the manifest intent of the testator, apparent on the face of the will.

There being no error in the decree appealed from, the same will be affirmed with costs to the appellees.

*Decree affirmed.*

(Decided 27th June, 1878.)


BARTOL, C. J. and MILLER, J., dissented.