## HENRY J. JUDIK, ET AL. *v.* WILLIAM M. TRAVERS
## CHARLES C. REEDER ET AL *v.* SAME

[Nos. 65-66, October Term, 1944.]

Decided December 21, 1944.

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, BAILEY, CAPPER, and HENDERSON, JJ.

*James C. Burch,* with whom was *Michael F. Delea* on the brief (in No. 65), and *F. Fulton Bramble* (in No. 66), for the appellants.

*Paul R. Hassencamp* in both cases, with whom was *E. Donovan Hans, William J. Stocksdale,* and *Randolph Barton, Jr.,* on the brief, for the appellees.

MELVIN, J., delivered the opinion of the Court.

These cases involve the construction of the residuary clause of the last will and testament of the late J. Henry Judik, of Baltimore City. The will was executed under date of May 9, 1904, at which time the testator had a wife and eight children, for whose special benefit a carefully prepared testamentary plan was evidenced. To each of his "eight beloved children" he bequeathed the sum of $5,000 in cash and the entire residue of his estate to his wife, Lillie A. Judik, and Alexander Yearley, Jr., and Harry M. Benzinger, as trustees, upon the following terms and conditions:

"In Trust to pay the net income thereof, unto my said beloved wife, Lillie A. Judik, for and during the term of her natural life, but no longer, and from and immediately after the death of my said beloved wife, in trust to· pay the net income thereof, in equal shares, unto my said eight beloved children, for and during the term of their respective lives, but no longer, and from and immediately after the death of each of my said beloved children, respectively, in trust for their child or children, respectively, and the issue or descendants of any deceased child or children, such issue or descendants of any deceased child or children, however, to take the share or shares per stirpes and not per capita.

"In Trust in the event of the death of any of my beloved children, without leaving a child or children, or the issue or descendants of any deceased child or children

then living, for my surviving children and the issue or descendants of such of them as may be then deceased, such issue or descendants of any deceased child or children, in such case, to take per stirpes and not per capita, in equal shares absolutely."

The testator died on May 16, 1910, and his will aforesaid was duly admitted to probate by the Orphans' Court of Baltimore City. One of the trustees, Alexander Yearley, Jr., having declined to act, the others named in the will, to wit, Lillie A. Judik and Harry M. Benzinger, entered into possession of the rest and residue of the estate and thereafter administered the trust without having submitted it to the jurisdiction of the Court. Mr. Benzinger died on April 3, 1934, leaving Mrs. Judik as the sole surviving trustee. Upon her death on December 13, 1943, there being no trustee to continue the further administration of said trust, her four surviving children filed a petition in the Circuit Court for Baltimore City, asking the appointment of a new trustee and that the Court take jurisdiction of said trust. Upon this petition the Court passed a decree appointing William M. Travers, the appellee here, substituted trustee under said will, and assuming jurisdiction of the trust. The substituted trustee thereupon, in due course, filed his bill of complaint in Circuit Court No. 2 of Baltimore City, naming as defendants all of the parties in interest under the will of J. Henry Judik and asking the Court to construe the said will and to appoint a trustee to prepare and submit to the Court a proposed plan of division and sale of the trust property.

In the bill of complaint it is recited that when the will was executed the testator had eight children, but that one of these children, Joseph C. Judik, died unmarried on February 1, 1908, so that the testator was survived, in fact, by seven children. Of these surviving children, the following subsequently died: (1) A daughter, Irene Judik, on January 24, 1911, survived by one son, Charles C. Reeder, who is still living and has three infant children. These representatives of Irene Judik's share in

the trust estate are parties appellant here (No. 66) ; (2) a son, Henry Judik, died on March 5, 1921, leaving two children, Mary M. Wise and Henry J. Judik, both of whom are still living and neither of whom has children. These two grandchildren of the testator, Henry J. Judik, are parties appellant in No. 65; (3) a son, John O. Judik, who died August 17, 1937, unmarried, and leaving no children or descendants.

The particular allegations of the bill of complaint which relate to the residuary clauses now under consideration are those contained in Paragraphs 7 and 8, as follows:

"Seventh: Plaintiff further alleges that he is advised that by the terms of said Will the shares of the corpus of the trust of deceased children of the Testator who have descendants now living have vested absolutely, per stirpes, in such descendants, so that certain shares are now vested absolutely in certain persons, and the shares of still living children are still vested in the Plaintiff, as substituted trustee under said will; that, therefore, plaintiff is a tenant in common with said other parties of all the property comprising the trust estate, and that a division thereof is necessary in order that those who get their shares outright may receive them and that the portion still remaining and vested in your plaintiff, as substituted trustee, may be designated and held by said substituted trustee under the continuing trust.

"Eighth: Plaintiff is further advised, however, that the will is not entirely clear in what proportions and in what manner the estate is thus vested in now living descendants of said testator, and that in order that a proper division may be made it is necessary first to determine what said proportions are; that to that end a construction of said will is desirable, in which, among other things, the Court may determine or decree—

"(a) Whether the share or shares of deceased children now vest absolutely in their descendants or are to be held in continued trust;

"(b) Whether the share or shares of children, who died, without descendants, passing to still living children, vest absolutely in such children or are to be held as a part of the original trust.

"(c) Whether the share or shares of children, who died without descendants, passing to descendants of deceased children, vest absolutely in such descendants of deceased children or are to be held as a part of the original trust.

"(d) Any other questions which any one interested in said will may desire to present to said Court."

To this bill of complaint, five separate answers were filed, namely, one by Charles C. Reeder, one by the guardian ad litem of the Reeder minors, one by the four surviving children of the testator, one by the two children of Henry Judik, deceased; one by a granddaughter, and another by the guardian of the two minor great-grandchildren representing the share of Mary Louise Judik, one of the surviving children of the testator, J. Henry Judik. These respective answers may be divided into two conflicting groups insofar as they relate to the one and only issue presented for determination on these two appeals, namely, the issue raised in Section (b) of Paragraph 8 of the Bill of Complaint.

Attention is to be focused, therefore, upon this particular subsection, the wording of which is: "(b) Whether the share or shares of children who died without descendants passing to still living children vest absolutely in such children or are to be held as part of the original trust." The two answers on behalf of the Irene Reeder interest meet this issue by categorically claiming: "(b) The share or shares of children dying without descendants and passing to still living children of the testator do not vest absolutely in such children, but are to be added to, and treated as part of, their original trust share." Completely in accord with this position, although expressed in somewhat different phraseology, is the answer filed on behalf of the two children of Henry Judik. Directly to the contrary, the answer on behalf of the four surviving children of

the testator, as well as the answer on behalf of the Marie Louise Judik interest, take exactly the opposite position, likewise in categorical language, as follows: "(b) The share or shares of children dying without descendants and passing to still living children of the testator, vest absolutely in such children and are not to be added to and treated as a part of their original trust share."

The parties to these proceedings being in accord on all other issues, the Chancellor passed a decree assuming jurisdiction of the trust and prescribing the proportions and manner in which the estate of the testator passed under his last will and testament. The appeal by the appellants in both No. 65 and No. 66 is to that part, only, of the decree which holds, in effect, that the share or shares of children dying without descendants, and passing to still living children of the testator, vested absolutely in such children and are not to be added to, and treated as, a part of their original trust share.

In construing wills the supreme law of every case is the intention of the testator, and when once that is ascertained, it must be given effect, insofar as it is lawful, and all other considerations whatsoever must yield to it. *Grace v. Thompson,* 169 Md. 653, 658, 182 A. 573; *Buchwald v. Buchwald,* 175 Md. 103, 111, 199 A. 795; *Estate of Childs v. Hoagland,* 181 Md. 550, 557, 30 A. 2d 766; *Sabit v. Safe Deposit & Trust Co.,* 184 Md. 24, 40 A. 2d. 231.

Where the language employed by the testator is free from ambiguity, the Court must disregard every consideration except affirmance and enforcement of the intention as thus expressed, unless it contravenes some rule or principle of law. *Ross v. Safe Deposit & Trust Co.,* 168 Md. 65, 176 A. 483; *Allender v. Keplinger,* 62 Md. 7; *Robinson v. Mercantile Trust Co.,* 180 Md. 336, 24 A. 2d 299. It is only when the verbal expressions are of doubtful meaning that the rules or canons of construction may be invoked, and even these rules have no binding force, being mere guides to aid in the discovery of this all important element of intention.

It is also to be observed that the interpretation of wills, depending mainly upon the particular words chosen by the testator in a given instance, can derive but little aid from adjudicated cases, in which other wills, different in their terms and provisions, have been judicially construed. *Smithers v. Hooper*, 23 Md. 273; *Elder v. Lantz*, 49 Md. 186.

Nowhere have we found this aspect of the subject more cogently expressed than in the case of *In re Stone, Baker v. Stone*, L. R. 1895, N. S. 2 Chancery Div. 196. There two of the Lord Justices who decided the appeal went right to the point in determining the intent of the testator in dividing his estate, the question being whether the division was intended to be "per stirpes" or "per capita." In disposing of the appeal by simply ruling without any citations that the testator's intention was clear for a per capita distribution, Lindley, L. J., concluded his opinion with this statement: "I do not enter into an examination of the cases: when I see an intention clearly expressed in a will, and find no rule of law opposed to giving effect to it, I disregard previous cases." Kay, L. J., concluded his own concurring opinion in these words: "We ought to abide by the language of a testator and not alter it on conjecture. Stirling, J. (from whose decision the appeal was taken), seems to have felt himself bound by the decisions; but I am against construing one will by another where the language of the two is not identical."

This applies with equal force to the case at bar, for here, too, we need look no further than to the will itself to determine what the testator meant by what he said. This document shows on its face a carefully thought-out testamentary plan and one in which the testator provided for every contingency that might arise in the natural course of events. Every part of this plan is directly related to the whole general scheme and designed to give full effect to it, namely, the creation of a trust estate which would secure to his wife an adequate income during her lifetime and then, upon her death, the

continuance of the trust so that each one of their children would likewise, have an income for life. By way of emphasizing that he did not intend that either his wife or his children should ever receive more from the trust estate than a life interest, he took care to add the significant words "but no longer" to his bequest for life in each case.

Thus far the testamentary plan was simple and clear, but it was obviously incomplete. One after another of his children would die, of course,—some, probably, leaving issue and some not. What then? The testator at once provided for both of these contingencies, taking them in order. He so worded the next sentences in his will that if any of his children should die leaving issue, the latter would take the parent's interest absolutely and free from the trust, "such issue or descendants of any deceased child or children, however, to take the share or shares per stirpes and not per capita."

All parties to the instant case agree that up to this point the testator's intention is perfectly clear and that his plan, as above outlined, is legally sound and should be given effect. It is relevant to note here that the theory or principle of law upon which the issue or descendants of the testator's deceased children acquired an absolute title to their respective portions is that enunciated in the case of *Hooper v. Felgner*, 80 Md. 262, 271, 30 A. 911. This is to the effect that since the will prescribes no duties or functions to be performed by the trustee after the death of the life tenants the trust terminates. See also *Miller on Construction of Wills*, p. 484.

Having thus provided for his wife, and his children, and for the contingency of there being issue or descendants upon the death of any of his children, the unfinished part of the testator's plan was to provide for the distribution of the share of any of his children who might die without living issue. He proceeded to do this in the very next paragraph of his will and employed language for this purpose which is in clear conformity with the preceding paragraph and fits in exactly with the whole

testamentary plan. He provided, simply, that in the event of the death of any of his children without issue the trust should continue as to "surviving children and the issue or descendants of such of them as may be then deceased, such issue or descendants of any deceased child or children in such case to take per stirpes and not per capita, in equal shares absolutely."

We find it impossible to discern from a study of each of the above mentioned paragraphs, and then considering them together as parts of the whole will, any variation whatever in this second paragraph from the general testamentary plan so clearly, and admittedly, indicated in the preceding paragraph.

The foundation of this plan was the providing of an income for life for his wife and children, and, as to them, the testator made it plain and emphatic that the residuary estate should be used for no other purpose. Equally plain, although expressed in the technical language of the learned and skilled draftsman, were the provisions of the will directing that, as to the testator's grandchildren and later descendants, their fractional portions of shares should vest absolutely and free from the trust. The one concern, in their instance, was to provide that they should take per stirpes and not per capita, and the concluding words of each of the two paragraphs had reference to that point and none other. They were applied, moreover, to the issue or descendants of any deceased child or children of the testator, and not to his surviving children. The words "to take per stirpes and not per capita, in equal shares absolutely," could have no other meaning or reference.

It was but natural and logical that a testamentary document as carefully conceived and as expertly drawn as the one now under consideration should have contained an expression on this potentially troublesome phase of will-making and not have left to conjecture the manner in which these descendants should take their respective shares after the death of the life tenant — that is to say, whether per stirpes or per capita. The rule is that

all take per capita, unless a contrary intention appears, in cases of bequests to descendants equally, or to all the descendants of any person, or to descendants simply. *Levering v. Orrick,* 97 Md. 139, 145, 54 A. 620; *Requardt v. Safe Deposit & Trust Co.,* 143 Md. 431, 435, 122 A. 526. See also *In re Stone v. Baker,* supra. The testator in the instant case obviously wanted to make clear that his intention was contrary to the rule on this point and that is precisely the effect of the language used to do so.

Where a will is drawn by one learned in the law and skilled in the use of its terminology, the words employed will be considered as having been deliberately chosen to express the testator's intention and will ordinarily be given their accustomed technical meaning. *Buchwald v. Buchwald,* 175 Md. 103, 111, 199 A. 795; *Wiesenfeld v. Rosenfeld,* 170 Md. 63, 183 A. 250.

Taking into consideration, therefore, all the circumstances surrounding the testator at the time of the execution of this will as disclosed by the record, and giving due effect to every word and phrase employed in recording his general testamentary plan, we find a clearly expressed intention on his part to provide for his wife and children on the basis of a life interest, only, in the income from his residuary estate. We must sustain, therefore, the contention of the appellants that the share or shares of testator's children dying without descendants and passing to his still living children do not vest absolutely in such children but are to be added to, and treated as part of, their original trust share. It necessarily follows that that portion of the Chancellor's decree which reached the opposite conclusion must be reversed.

> *In Nos. 65 and 66 decree affirmed in part and reversed in part, and cause remanded for the passage of a decree in conformity with this opinion. Costs to be paid by the appellee out of the trust estate.*