Carolyn Bauernschmidt **PURIFOY, et al.**

v.

**MERCANTILE–SAFE DEPOSIT AND TRUST COMPANY, Trustee, et al.**

**Civ. A. No. 72–1040–N.**

United States District Court,
D. Maryland.

March 11, 1974.

J. Nicholas Shriver, Jr., William A. Snyder, Jr., and Ober, Grimes & Shriver, Baltimore, Md. (and Ben R. Miller, Baton Rouge, La., of counsel), for plaintiffs.

Robert M. Thomas, Alexander I. Lewis, III, and Venable, Baetjer & Howard, Baltimore, Md., for defendant Mercantile-Safe Deposit and Trust Co., as Trustee.

Daniel H. Honemann, Walter E. Black, Jr., and Clapp, Somerville, Black & Honemann, Baltimore, Md., for defendants Bauernschmidt, Thompson, Bauernschmidt, Murray, Roberts, Bartlett, Requardt and Valiant.

Allan H. Fisher, Jr., of Baltimore, Md., for defendant Mercantile-Safe Deposit and Trust Co., as Trustee.

NORTHROP, Chief Judge.

The plaintiffs have instituted this suit for a declaratory judgment pursuant to 28 U.S.C. §§ 1332(a) and 2201. The plaintiff, Carolyn Bauernschmidt Purifoy, is a resident of Texas, and the plaintiff, Grace M. Bauernschmidt, is a resident of Mississippi; the defendants are residents of Maryland, Connecticut and Virginia. The parties all agree that Maryland law governs the construction of the four wills and one deed of trust in question.

In general, all five instruments create trusts, the income or portion of income thereof to be paid to William Bauernschmidt, Jr. for his life, and upon his death the income and/or principal to be paid to the said William Bauernschmidt, Jr.'s "children" or "descendants" living at his death. If he should die without child or descendant, the share would be distributed in various ways to William Bauernschmidt, Jr.'s brothers, sisters, first cousins, nephews, or nieces. Each trust instrument was executed and became effective prior to June 1, 1947.

William Bauernschmidt, Jr. and his wife Grace were married in January, 1940. At the time of their marriage, Grace already had a natural daughter living with her, the plaintiff Carolyn. After two attempts to have children by Grace resulted in miscarriages, William legally adopted Carolyn on January 13, 1948. William Bauernschmidt, Jr. died on July 24, 1972.

The critical question presented by the instant case is as follows:

> Do the terms "child," "children," "descendants," and similar terms used in the five trust instruments include the plaintiff Carolyn Bauernschmidt Purifoy, an adopted child, (and her descendants)?

The basic function of a court in the construction of wills or deeds of trust is to ascertain and effectuate the intention of the testator or settlor. *E. g., Leroy v. Kirk,* 262 Md. 276, 277 A.2d 611 (1971); *Marty v. First National Bank,* 209 Md. 210, 120 A.2d 841 (1956); 4 Page, Law of Wills § 30.6 (Bowe-Parker ed. 1961); T. Atkinson, Wills § 146 (1953). The intention of

the testator is found first in the instrument itself and the plain meaning of the words used therein. *Wesley Home, Inc. v. Mercantile-Safe Deposit & Trust Co.,* 265 Md. 185, 289 A.2d 337 (1972); *Cole v. Bailey,* 218 Md. 177, 146 A.2d 14 (1958); *Marty v. First National Bank, supra.* If this analysis reveals a latent ambiguity, extrinsic evidence of the testator's declarations or of other relevant circumstances may be admitted to show what the testator understood was signified by the words employed in the will. *Shellady, Inc. v. Herlihy,* 236 Md. 461, 474, 204 A.2d 504 (1964); *Darden v. Bright,* 173 Md. 563, 568–69, 198 A. 431 (1938).

■■ Often, however, after all available admissible evidence is introduced, the meaning of the instrument and its application to external facts may still be in doubt. L. Simes, Law of Future Interests § 87, at 183 (1966); T. Atkinson, *supra,* § 146, at 813. In these situations it is impossible to determine the testator's actual intent, since the testator probably never contemplated the contingency that has given rise to the litigation. *Boal v. Metropolitan Museum of Art,* 292 F. 303 (S.D.N.Y.1923); 4 Page, *supra,* § 30.3, at 10; Gray, Nature and Sources of Law 316 (1909). The task of the court is no longer a search for the *actual* intent of the testator; rather, the court endeavors to assign a meaning to the language of the will that comports with sound public policy. L. Simes, *supra;* 4 Page, *supra,* § 30.3, at 10–12; T. Atkinson, *supra,* § 146, at 814.[1] Since certain words, phrases, and other language are often the subject of litigation, rules and principles of construction have emerged and are used by the courts in a manner similar to rebuttable presumptions. These rules have their origin in prior decisional law (*see, e. g., In re Paulsen's Estate,* 113 Colo. 373, 158 P.2d 186 (1945) (presumption against intestacy); *Fleshner v. Fleshner,* 378 Ill. 536, 39 N.E.2d 9 (1941) (presumption in favor of early vesting)) or in legislative enactments (*see, e. g., Prince v. Nugent,* 93 R.I. 149, 172 A.2d 743 (1961) (statute includes adopted children); *In re Iburg's Estate,* 196 Cal. 333, 238 P. 74 (1925) (statute covering the revocation of a prior will by a later one)). Therefore, a court should seek first the actual intention of the testator from the will and pertinent external circumstances; only if this investigation is unsuccessful should the court invoke the rules of construction to ascertain the meaning of the language employed.

■ From a complete consideration of all the trust instruments in the instant case, this Court finds that it is impossible to determine whether the testators or settlors actually intended to include or exclude adopted children. The only terms used to describe the class in question are "child," "children," and "descendants." No reference is made to adopted children in any of the instruments. At the time each instrument was executed, William Bauernschmidt, Jr. was unmarried and without any natural children. Thus the terms "child," "children," etc. could not have designated any particular person or persons.

1. Courts have frequently failed to distinguish between the ascertainment of the testator's actual intention and the assignment of meaning to language when the intention is unclear or non-existent. They have characterized the entire construction process as a search for the testator's intention and have obscured the assignment function by labeling it an "aid in the discovery of . . . intention," *Judik v. Travers,* 184 Md. 215, 221, 40 A.2d 306, 309 (1944), a search for the testator's "probable intent," *Fidelity Union Trust Co. v. Robert,* 36 N.J. 561, 178 A.2d 185 (1962), and "an attempt to formulate a permissible intent," *Veditz v. Athey,* 239 Md. 435, 450, 212 A.2d 115, 123 (1965) (Horney, J., dissenting). The commentators, on the other hand, have found fundamental differences in the two processes and have termed the determination of the testator's subjective intention as "interpretation" and the assignment of meaning as "construction." *See* 4 Page, *supra,* § 30.3, at 11–12; T. Atkinson, *supra,* § 146, at 809–17. Primary among these differences is the recognition of when actual intention ends and the assigning of "judicially ascertained intent" begins. *See* L. Simes, *supra,* § 87, at 183.

The gift was to a class that would come into existence some time in the future.

The defendants argue that the intention of the testator is clear and unambiguous, since the words "child" or "children" excluded adopted children under the law prior to 1947, and the testator is presumed to know the law and to execute his will in accordance with the law at that time. This argument, however, fails to properly distinguish between the actual intent of the testator in employing the words in question and the meaning that a rule of construction assigns to them. Md.Ann.Code art. 16, § 78 (1924), in effect from 1892 to 1947, de- 78 (1924), in effect from 1892–1947, defined "[t]he term 'child' or its equivalent" as including only the adopted child of the testator unless the contrary plainly appears, and Md.Ann.Code art. 16, § 78(c) (1973), in effect from 1947 to present, defines a "child" as including *any* adopted person unless the contrary plainly appears. From these two statutes, it can readily be inferred that the terms "child," "children," and "descendants" *by themselves* do not indicate the actual intention of the testator towards adopted children. Otherwise the Legislature would not have assumed the task of assigning a meaning to the words. Furthermore, for these words to reflect a clear actual intention, this Court would have to make the unwarranted assumption that the testator actually considered the contingency of adoption in choosing the words. The defendants, though, find actual intention in a combination of the terms "child," "children," etc. and the rule of construction prior to 1947, which excluded adopted children of one other than the testator. In other words, the defendants would have an earlier rule of construction, without anything else, become part of the testator's actual intent so as to defeat the retroactive application of a subsequent and conflicting rule of construction. By definition, a rule of construction is *not* synonymous with or a part of the actual intent of the testator. Its function is to assign a meaning to the words when the testator's actual intention cannot be determined, and only after the failure to find an intention can a rule of construction be considered. *See Davis v. Mercantile-Safe Deposit and Trust Co.,* 235 Md. 266, 269, 201 A.2d 373 (1964); *Judik v. Travers,* 184 Md. 215, 221, 40 A. 2d 306 (1944); *Veditz v. Athey,* 239 Md. 435, 450, 212 A.2d 115 (1965) (Horney, J., dissenting); L. Simes, *supra,* § 87, at 183; 4 Page, *supra,* § 30.4.[2] Therefore, since the testators used only the words "child," "children," and "descendants" and since the will and surrounding circumstances fail to reveal that the contingency of adoption was ever considered, no actual intention of the testator concerning adopted children is present. The meaning to be ascribed to the words in question is to be found in one of the two applicable rules of construction.[3]

Since adoption was unknown to the common law, the state statutes with their judicial construction govern the

---

**2.** "While it is sometimes said that the rules of law for determining testator's intention are to be treated as if they were written into the will . . . or that testator is presumed to know the rules of law which control the construction of his will, and that the ordinary rules of construction will . . . be applied . . . *this explanation is fictitious.* The principles and rules of construction are adopted by the legislature or by the courts because they afford a satisfactory and convenient method for ascertaining an intention *which is not clear upon the face of the will, rather than be-* *cause the testator knew of such rules and principles and adopted them deliberately."* [footnotes omitted] 4 Page, *supra,* § 30.4, at 14–15 (emphasis supplied).

**3.** In the usual case, a court would automatically apply the appropriate rule of construction without analyzing the conceptual steps involved in the process. Here, however, two conflicting rules can be used, and the defendants are trying to elevate one to the status of an "actual intention" of the testator so as to overcome any possibility that the opposing rule could be employed. This, they clearly cannot do.

rights and liabilities of adopted children. In Maryland, the statute in effect from 1912 to 1947 (the period when the five trust instruments at issue became effective) was Article 16 §§ 76 and 78, which read as follows:

> 76. The effect of such decree of adoption shall be to entitle the child so adopted to the same rights of inheritance and distribution as to the petitioner's estate, and the same rights or protection, education and maintenance as if born to such petitioner in lawful wedlock, and the natural parents of such child shall be freed from all legal obligation towards it, provided that where such child inherits property from its adopted parent or parents, upon it dying intestate without issue the property thus inherited shall descend and be distributed to the same persons who would take the same by inheritance and in course of distribution if the child had been the child of the adopted parents born to them in lawful wedlock; provided, however, that this shall not be construed to limit or interfere with the power of disposition over such property by gift, grant, devise, bequest or otherwise by said adopted child.

> 78. The term "child" or its equivalent in a deed, grant, will or other written instrument shall be held to include any child *adopted by the person executing the same,* unless the contrary plainly appears by the terms thereof, whether such instrument be executed before or after the adoption. (emphasis supplied).

The Maryland Court of Appeals construed this statute in the case of *Eureka Life Insurance Co. v. Geis,* 121 Md. 196, 88 A. 158 (1913) to allow an adopted child to take under the will of his adoptive parent, but not to take through the parent from the parent's lineal or collateral kindred. In 1947, Maryland's adoption law underwent a major revision, the purpose of which was to accord adopted children *all* of the legal rights of natural children and to sever all of the adopted

child's ties with his natural parents. Article 16 § 78(c) of the new law read as follows:

> The term "child," "heir," "issue," "descendant" or an equivalent in a deed, grant, will or other written instrument shall be held to include any adopted person, unless the contrary plainly appears by the terms thereof, whether such instrument was executed before or after the entry of the interlocutory decree of adoption, if any, and if none, before or after the entry of the final decree of adoption.

This section soon came before the Court of Appeals in the case of *Gutman v. Safe Deposit & Trust Co.,* 198 Md. 39, 81 A.2d 207 (1951). In *Gutman* the testatrix died in 1923 and in her will gave a life estate to her son with the remainder to the son's "child or children or descendants." The son died in 1948 and was survived by a natural child and a child adopted prior to 1947. The Court declared that the only issue before it was whether the adoption statute was retrospective. The Court held that the Act was *not* retrospective, that the law in effect at the testatrix' death (1923) was to be applied, and that, consequently, the adopted child could not take as a "child" or "descendant" under the will of his adoptive parent's mother.

In 1961, however, the Maryland Legislature amended Article 16 § 78(c) by adding the following language at the end of the section:

> . . . in the event such instrument was executed *prior to June 1, 1947,* the provisions of this subsection shall apply to those adopted persons as to whom the interlocutory decree of adoption, if any, and if none, the final decree of adoption was entered on or after June 1, 1947 (Emphasis supplied).

The effect, if any, of this amendment has yet to be determined by the Court of Appeals.

In sum, this Court is confronted with a case in which there are *two* diametrically opposed rules of con-

struction that can be applied to the trust instruments. One rule, embodying an affinity for blood relations, was in effect at the time of execution and effective dates of the wills, while the recent rule, reflecting a fundamental shift in favor of full rights for adopted children, was in existence when the plaintiff Carolyn was adopted and when the life tenant died. Although Maryland appears to adhere to the principle that the law in effect at the execution of the will is to be applied (*see Gutman v. Safe Deposit & Trust Co., supra*), this precept cannot be invoked if the later statute is deemed to have a restrospective effect. Therefore, the *threshold issue* in the instant case is whether Article 16 § 78(c), as amended in 1961, renders the Act of 1947 retrospective. This question involves only the construction of a state statute and does not entail any consideration of the rights guaranteed by the United States Constitution. For if the statute is held prospective, no constitutional issue is raised. It is only if a retroactive construction is placed on the statute that a second and separate issue emerges— whether the retroactive statute divests vested property rights in violation of the due process clause of the fourteenth amendment.

█ The doctrine of abstention, as enunciated in *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), requires a federal court to refrain from adjudicating a controversy properly before it where a state statute is being challenged as contrary to the federal constitution, and there are questions of state law that may be dispositive of the case. C. Wright, Law of Federal Courts § 52, at 196 (1970). In other words, where the state court's interpretation of the state statute may obviate the need to consider its validity under the federal constitution, the federal court should hold its hand, lest it render a constitutional decision unnecessarily. *City of Meridian v. Southern Bell Telephone & Telegraph Co.*, 358 U.S. 639, 79 S.Ct. 455, 3 L.Ed.

2d 562 (1959); *Spector Motor Service, Inc. v McLaughlin*, 323 U.S. 101, 65 S. Ct. 152, 89 L.Ed. 101 (1944); *Railroad Commission v. Pullman Co., supra*.

The instant controversy is a particularly appropriate case for the application of the *Pullman* doctrine. First, as stated above, the existence of a federal constitutional question is wholly dependent upon the determination of the prospectivity or retroactivity of the 1961 amendment. *Barrett v. Atlantic Richfield Co.*, 444 F.2d 38, 41 (5th Cir. 1971).

Second, the construction of the Maryland adoption statute is by no means clear. There is merit to the arguments of both parties. The plaintiffs contend (1) that the plain meaning of the 1961 amendment makes the 1947 statute retroactive to all instruments executed prior to 1947 when the "child" in question was adopted after June 1, 1947, and (2) that the *Gutman* decision does not control this case, because in *Gutman* the adoption took place before June 1, 1947 and the 1961 amendment was not before the Court. The defendants reply claiming (1) that the 1961 amendment covers only those wills executed prior to June 1, 1947, but *effective* after June 1, 1947; (2) that *Gutman* expressly held the 1947 adoption statute prospective; and (3) that the Legislature had no intention of rendering the statute retroactive by the 1961 amendment as evidenced by the lack of any debate or legislative history. The plaintiffs' replication asserts (1) that the *Gutman* Court did not consider the entire adoption statute in reaching their holding; and (2) that the term "such instrument" refers to wills, deeds, and grants, and the effective date of deeds and grants is usually contemporaneous with the execution date.

Last, a construction of the 1961 amendment by the Court of Appeals of Maryland may well dispose of the case entirely, and thus avoid the necessity of a constitutional adjudication. *See Barrett v. Atlantic Richfield Co., supra*. If the Court of Appeals finds Art. 16 § 78(c), as amended, prospective, the controversy

is concluded and no further issues, constitutional or otherwise, need be decided. The plaintiffs, on the other hand, argue that if the statute is held retrospective, the suit is not terminated because the federal constitutional claim must then be litigated in federal court. As such, according to the plaintiffs, the opinion of the Court of Appeals would be advisory in nature. This argument, however, ignores the fact that the certification statute invests the Court of Appeals with jurisdiction to decide issues of state law that *"may* be determinative of the cause then pending in the certifying court." Md.CodeAnn. art. 26 § 161 (1973) (emphasis supplied).

■ Furthermore, even though the parties have a right to present the federal constitutional issues to a federal court, they may forego this right by voluntarily presenting their claims to the Court of Appeals of Maryland. *England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). The defendants in the instant case have indicated that they would be willing to abide by an adverse decision of the Court of Appeals on the federal constitutional issue. Thus, holding the statute retroactive and constitutional would dispose of the present suit.[4] Only if the State Court should decide the statute retroactive and unconstitutional would collateral review be required of this Court, since the plaintiffs originally chose federal jurisdiction and have expressly refused to relinquish that right.

The original order declining certification by the Court of Appeals did not take into consideration the views expressed in this opinion. The one page order of that Court finds the threshold issue to be one of federal constitutional law, which is exactly the reverse of what this Court believes to be the determinative question. In addition, unless the Maryland Court of Appeals decides whether Article 16 § 78(c), as amended,

is prospective or retroactive, this Court will be forced to decide the issue in order to resolve the present controversy. In such event, there is a distinct possibility of conflicting rules of law in Maryland.

■ For these reasons, this Court will order a recertification of this case to the Court of Appeals of Maryland. A copy of this opinion shall be attached as one of the exhibits to the Order of Recertification.

---

4. The only relief available to the defendants then would be to the Supreme Court by a writ of certiorari.